KELLEY, RESPONDENT, *v.* THE FOURTH OF JULY MINING COMPANY, APPELLANT.

[Submitted July 15, 1895.   Decided July 29, 1895.]

NEGLIGENCE—*Safe place to work—Mining.*—It is the duty of the employer to use all reasonable means to provide a safe place in which the employe may perform his service, and therefore, a miner engaged in driving a tunnel, whose work is confined to drilling and blasting from its face, while assuming the risk naturally attendant upon such work, does not assume the risk of the failure of his employer to use reasonable precautions to prevent the roof of that part of the tunnel already created from caving upon him, or failure to keep the floor of the tunnel so free from debris as not to obstruct his escape in case of accident.

SAME—*Contributory negligence—Mining.*—A miner engaged in drilling and blasting in the face of a tunnel and who did not understand timbering a mine, is not guilty of contributory negligence in remaining at work in the tunnel where it appeared that the day before the caving in of a portion of the roof of the tunnel by which he was injured, he had assisted in putting in a stull under it by direction of the foreman, and that afterwards upon noticing the dirt falling from the roof, he asked the foreman, who was an experienced timberman, if it was safe and was assured that it was,—it being a disputed question as to whether the stull was properly placed in the mine, and whether, if properly put in, was sufficient to support the roof, and it not appearing that the danger of the mine caving at the time of the accident was obvious.

SAME—*Contributory negligence—Promise to remove obstacle to escape.*—Nor would the miner in such case be guilty of contributory negligence in remaining at work when the danger of working in the tunnel was increased by reason of an accumulation of debris behind him which would obstruct escape in case of accident, where on the afternoon before the mine caved in, he requested the foreman to have the same removed and received his promise that it would be removed the following morning, since he would be justified in continuing at work for a reasonably sufficient time for the performance of such promise, notwithstanding the increased danger,—there being no obvious or immediate danger of the mine caving at the time and the miner was

relying upon the foreman's assurance of its safety.  (*McAndrews* v. *Montana Union Railway Co.*, 15 Mont. 290, distinguished.)

SAME—*Agency—Vice-principal.*—A foreman for a mining company who has full control of the property, employes, tools, materials and complete charge of the management and development of the mine, is a vice-principal of the corporation, and, when guilty of negligence in not sufficiently timbering a tunnel in which an employe was working and received his injuries, his negligence is the negligence of the corporation for which it must respond in damages.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for damages for personal injuries.   The case was tried before HUNT, J.   Plaintiff had judgment below.   Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action for damages for personal injuries.

The plaintiff is a miner, and alleges substantially in his complaint that on the 27th day of May, 1891, he was actually engaged and employed by the defendant, which is a corporation, in mining in a tunnel in its mine; that he was employed in drilling, blasting, and running said tunnel in said mine; that it was the duty of said defendant to furnish and sufficiently and safely timber said tunnel, so as to properly support the roof and sides thereof; that it was the duty of the said defendant, at the same time, to keep the said tunnel free from all debris, dirt, rock, and accumulation of material or matter, so as to render egress and ingress in and out of said tunnel easy and safe, so that any one could pass without obstruction from the point were plaintiff was working in said tunnel to the mouth thereof.   It is alleged that defendant negligently failed to so safely timber said tunnel, or to keep the same free from debris, rock, and dirt, and other matter, which accumulated therein, between where plaintiff was working and mining and the mouth thereof.   It is alleged that defendant had negligently permitted said tunnel to become obstructed with a large amount of rock, dirt, and matter, at a point therein between where plaintiff was working and the mouth thereof, which rendered egress and escape therefrom in case of accident difficult

and dangerous; and that defendant had notice of the condition of said tunnel. It is alleged that, by reason of these wrongful and negligent acts and omissions of the defendant, the said tunnel, on the 27th day of May, 1891, caved in, and the roof thereof fell upon the plaintiff, at a point near where he was working; and that, by reason of the accumulation of said rock, dirt, and material therein, he was prevented from escaping therefrom; that he was caught and crushed, while attempting to escape from said tunnel, on the pile of rock, dirt, debris, and matter which defendant had wrongfully and negligently permitted to accumulate therein, by the dirt, rock, and material which fell upon him from the roof thereof. Plaintiff alleged that he was without fault or negligence in the premises; that he was permanently injured, and rendered helpless for life thereby; and claims damages in the sum of $50,000.

The answer denies the allegations of the complaint as to negligence, and alleges that it was the duty of the plaintiff and his fellow servants to properly timber the tunnel, and that the tunnel caved in by reason of the negligence of the plaintiff and his fellow servants in timbering the same, and that the plaintiff knew at the time of the accident that the tunnel was obstructed by debris, rock, dirt, etc., as alleged in the complaint, as well as the condition of the timbers in said tunnel.

The replication denies the new matter pleaded in the answer, and alleges a promise on the part of the foreman of the defendant to remove the debris, rock, and dirt from the tunnel, made prior to the accident.

The evidence of the plaintiff is, substantially, that he was employed to work in the mine of the defendant in the early part of April, 1891; that he continued to work there as a miner until he was injured, on the 27th day of May; that he was employed in running the tunnel or drift on the 100-foot level; he was engaged in drilling and blasting in the face of the tunnel; he assisted in extending the tunnel more than 100 feet in length; that he threw the rock he blasted from the face of the tunnel behind him; that he never removed any of this rock from the tunnel; that he was never asked to take this rock

out of the tunnel; his work was exclusively drilling and blasting; that this rock blasted from the face of the tunnel and thrown behind him was removed by another man; that, the afternoon before the accident, he called the attention of the foreman, John Sheehan, to the accumulation of rock, dirt, and debris in the tunnel; that he told the foreman "it was getting pretty rocky to crawl over that pile of rock,—that a man had to get down on his hands and knees and scratch the dirt away first;" that he asked the foreman when he was going to remove it; that the foreman said he would remove it "the following morning, as soon as he could get the carman off the 200-foot level, where he was working;" that the foreman did not remove this debris, as promised; that, the day before the accident, he had put a stull in the tunnel; that he put the stull in under the directions of the foreman; that, after it was put in, the foreman examined it with a two-handed striking hammer; that the foreman was in the habit of coming around and examining the work every afternoon, and, if anything was wrong, "he would tell you;" that, before putting in the stull, the dirt and sand were dropping from the roof; that he called the attention of the foreman to this, and asked that it be timbered; that he asked the foreman if it was safe; that the foreman said it "was perfectly safe, and when it needed timbering he would attend to it; he was there and knew his business; he had been a timberman in the Moulton for five years;" that he took his assurance, and had no apprehension of danger whatever; that thereafter the foreman caused two half sets of timbers to be placed in the tunnel; this was done before the stull was put in; that the foreman sent a man (who was carman, and doing whatever they put him at) to put in these two half sets, and directed witness to assist; that he had done no timbering in the mine, himself, prior to this; that, when he went into the tunnel to work, on the morning of the accident, and while throwing back the dirt and rock blasted from the face the afternoon previous thereto, he heard the timbers "creaking," and noticed fine dirt falling from the roof; he made a "jump" to get out, and "landed" on this pile of dirt

behind him, and was caught by the falling dirt and timbers, and injured, as alleged in the complaint.    He testifies that he was hired and paid by John Sheehan, the foreman; that Sheehan was the only person in control at the mine; that Sheehan received orders from no person at the mine; that he had full control of the mine; that none of the members of the defendant corporation were at the mine until after he was hurt; that the entire work was done as Sheehan directed; he hired and paid off all the men.

The evidence of John Sheehan, foreman of the mine contradicts that of the plaintiff in most particulars.    But that he had entire control and management of the mine is not disputed. The two half sets of timbers, mentioned in plaintiff's evidence as having been put in the tunnel, did not fall at the time of the accident.    The stull, for some reason, gave way, and the roof, which was supported by it, fell upon the plaintiff.    There is evidence, pro and con, as to whether the stull, if properly put in, was sufficient to support the roof; whether the roof should have been supported by other timbers; and as to whether it was properly placed in the tunnel; as well as to whose duty it was to timber the mine.    Any further statement of the evidence necessary to be made will be found in the opinion.

No question is raised as to the extent of the injuries sustained by plaintiff.    It is not claimed that the damages awarded by the jury are excessive.    The case was tried to a jury, who rendered a verdict for plaintiff in the sum of $15,600.    From the judgment, and order denying a new trial, defendant appeals.

*Thomas C. Bach,* for Appellant.

I.    The respondent was not working in a place; he was working in the creation of a place.    Where men are engaged in building a railroad, a bridge, a place—in other words where they are constructing a place, all who are engaged in that work are fellow servants, while they are so engaged; if the master has supplied competent servants, sufficient material and tools from which the servants are to select, then those who are

engaged in prosecuting the work are fellow servants, even though one of them hires and discharges the men. It is not a duty of the master to watch the work as it goes, and see that each of those, who are at work, does his work properly. (*Consolidated Coal & M. Co.* v. *Clay,* 38 N. E. 610–613 [Ohio;] *Armour* v. *Hahn,* 111 U. S. 313; *Ross* v. *Walker,* 139 Pa. St. 42; *Copper* v. *R. R. Co.,* 103 Ind. 305; *Cullen* v. *Norton,* 126 N. Y. 1; *McKinnon* v. *Norcross,* 148 Mass. 533; *Brazil & Ch. Coal Co.* v. *Cain,* 98 Ind. 282; *Burns* v. *Sennett,* 33 Pac. 916; *Lindvall* v. *Woods,* 41 Minn. 212; *Dewey* v. *R. R. Co.,* 97 Mich. 329; *Daubert* v. *Pickle,* 4 Mo. App. 590–591; *Bern* v. *Null,* 21 N. W. (Ia.) 701; *State* v. *Malster,* 57 Md. 287–307; *Beesley* v. *Wheeler & Co.,* Mich.)

II.   Where the law imposes a duty upon the master, whoever acts for the master in the discharge of that duty is the *alter ego* of the master, whose act is the act of the master, for which act, if it be negligently done, the master is responsible. The master has that legally imposed duty to perform; it must be performed, if not performed, or if negligently performed, and injury happens thereby, the master is responsible, and he cannot escape responsibility by urging that he entrusted the performance thereof to a competent and careful agent. That is the true test, and not the test of inferior and superior servant. But outside of these duties there can be no question of vice-principal. ''Those duties cannot be extended or increased by the circumstance that they are performed through the agency of another person.'' (*Ross* v. *Walker,* 139 Pa. St. 42.) Therefore it will be seen that the question turns rather on the character of the act than on the relation of the employes to each other. See also *Crispin* v. *Babbit,* 81 N. Y. 516; *Ross* v. *Walker,* 139 Pa. St. 42; *Cullen* v. *Norton,* 126 N. Y. 1; *Hussey* v. *Coger,* 112 N. Y. 614; *Conley* v. *City of Portland,* 78 Me. 217; *Ell* v. *N. P. R. R. Co.,* 1 N. Dak. 336; *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368, cited in *N. P. R. R. Co.* v. *Hambley,* 154 U. S. 358–360; *McKinnon* v. *Norcross,* 148 Mass. 533; *Larich* v. *Moies,* 28 Atl. (R. I.) 661; *Salem Stone & Lime Co.* v. *Chastain* 36 N. E. 910;

Noyes v. Wood, 102 Cal. 389; Burns v. Sennett, 33 Pac. 916; Loughlin v. The State, 105 N. Y. 150; O' Connell v. R. R. Co., 20 M. D. 222; Lindvall v. Woods, 41 Minn. 213; Matthews v. Case, 61 Wis. 491; Fones v. Phillips, 39 Ark. 17; Brazil & Ch. Coal Co. v. Cain, 98 Ind. 282; Railroad Co. v. Handman, 13 Lea (Tenn.) 423; De Mancho v. Builders Iron Foundry, 28 Atl. 661; see also Cooley on Tort page 543; see also an article written Judge Dillon in 24 Amer. Law Review cited in Ell v. R. R. Co., 1 N. D. 347, supra. Under these authorities then Kelly was not the alter ego of the defendant in regard to the place, because the rule of place was not concerned. He was the alter ego of the defendant in selecting materials and fellow servants; but as we have seen there was no negligence as to materials or as to the other men.

III. Granting that Sheehan was the alter ego of the defendant,—granting that he made the promise testified to by Kelly —granting even that the defendant itself made that promise— still instruction No. 5 does not state the law correctly. By this instruction the court charged the jury that in so far as the presence of dirt or rock on the floor of the tunnel was concerned, "The plaintiff was justified in continuing at work, notwithstanding his danger was increased by such accumulation, for such period of time after the promise as it would be reasonable to allow for its performance, and for any injury suffered within any period which would not preclude the reasonable expectation that the promise might be kept he may recover." Surely that is not the law. The true rule (subject to modifications given below) is this: That whether or not the plaintiff is "justified" by the promise in remaining is a matter for the jury to say, and not for the court. It is for the jury to say whether or not, under all the circumstances, the defect, its character, the danger to be apprehended therefrom, and the promise, a reasonably prudent man would be "justified" in remaining. (Hough v. R. R. Co., 100 U. S. 213, and cases cited; see also District of Columbia v. McElligott, 117 U. S. 621; Kane v. R. R. Co., 128 U. S. 325; Counsell v. Hall, 145 Mass. 468 and case cited; Manufacturing Co. v. Morris-

*sey*, 40 Oh. St. 148; *Missouri Furnace Co.* v. *Abend*, 107 Ill. 45–53.) But the instruction is wholly improper. It is not every promise to repair or remove that so qualifies the defense of contributory negligence or assumption of the risk. All of the cases which hold that the promise in any way weakens the defense are based upon complicated machinery, of which the nature is better comprehended by the master than by the servant. The true rule is : Where the machinery is not complicated and where the danger is apparent, then the master's promise is no justification and the defense is absolute, notwithstanding the promise, and the instruction is wholly improper under the facts in this case. (*Meador* v. *Lake Shore & M. R. R. Co.*, 37 N. E. 721; *Corcoran* v. *Milwaukee Gas Light Co.*, 81 Wis. 193; *Conroy* v. *Vulcan Iron Works*, 62 Mo. 35; *Gorven* v. *Hurley*, 56 Fed. 674–982–983; *Marsh* v. *Chickering*, 101 N. Y. 396.) The case of *McAndrews* v. *Montana Union Ry. Co.*, 15 Mont. 290, is certainly decisive of this controversy. Plaintiff knew that the dirt would materially retard his progress, and this at least he would have known had he exercised any thought at all, and he is bound to exercise such thought as men of his kind usually have, for he impliedly agreed when he took the service that he had such skill and experience in such work as usually possessed by men in that business. (*Pittsburg etc. R. Co.* v. *Adams,* 105 Ind. 152, and cases cited in report of this case in 5 N. E. 187–192; *Tuttle* v. *R. R. Co.*, 122 U. S. 189.) This is particularly true when it is remembered that it must appear that the servant must have relied upon the promise, and that it must appear that plaintiff was justified in assuming that the promise would be kept. Here the promise, if any, was to have it repaired in the morning, and there is no evidence that plaintiff remained either relying upon the promise or that the promise would be kept. See cases above cited; *Lewis* v. *N. Y. & N. E. R. R. Co.*, 155 Mass. 73; *Manufacturing Co.* v. *Morrissey*, 40 Ohio St. 148–150–154; *McAndrews* v. *Montana Union Ry. Co.*, 15 Mont. 290, where the chief justice says the plaintiff "never refused to use the car; he was never threatened to be discharged if he did not use it."

IV.   There is a direct conflict in the instructions.   Where conflicting instructions are given, there is error.   (*Kelly* v. *Cable Co.*, 7 Mont. 70–81, for which reason that case was reversed.   See end òf the opinion.   See also *District of Columbia* v. *McElligott*, 117 U. S. 621; *Solomon* v. *City Etc.*, *Co.*, 12 So. 339; *Palmer* v. *McMaster*, 10 Mont. 390; *Harrison* v. *R. R. Co.*, 65 Cal. 376; *Voegli* v. *Pickle*, 49 Mo. App. 643.)

V.   The evidence is insufficient to justify the verdict and the same is against the law.   This does not involve a dispute in the testimony.   There was no act of the defendant, of which the plaintiff complains, of which plaintiff did not know or of which he could not have known, the full character as well as the defendant.   Whether or not the defendant ought to have had a timberman to look after the timbering and to do it, the fact remains that defendant had no such man and the plaintiff knew it.   Although the law imposes certain duties upon the employer, still where the servant enters into the employment and knows (or even has ample opportunity of knowing) that the master, has, for instance, imperfect machinery, or no timberman; the servant assumes the risk of such employment. (*Tuttle* v. *R. R. Co.*, 122 U. S. 189; *Norfolk R. R.* v. *Jackson*, 8 S. E. 372; *Hayden* v. *Manufacturing Co.*, 29 Conn. 548; Bailey's Master's Liability, page 145 et seq.; and see cases cited in Cooley on Torts, page 551 et seq.)   It is not a question of contributory negligence, it is "the assumption of the risk."   There is a distinction between the "assumption of the risk" and contributory negligence.   (*Tuttle* v. *R. R. Co.*, 122 U. S. 189; *Mundle* v. *Manufacturing Co.*, 30 Atl. 16.)

*C. B. Nolan and T. J. Walsh,* for Respondent.

Were appellant's reasoning correct, there would be no cases in the books in which recovery was had under any circumstances by a man who had suffered an injury by the negligence of any person while they were engaged in building a house, operating a mine, extracting stone from a quarry, excavating for sewers or foundations or other purposes, constructing a railroad or unloading a ship.   The plaintiff would

not have prevailed in any of the following cases: *Cunningham*
v. *U. P. Ry. Co.*, 7 Pac. 795; *Beeson* v. *G. M. Cy. M. Co.*,
57 Cal. 20; *Koosorowski* v *Glasier*, 8 N. Y. 197; *Con. Coal
Co.*, *Wombacher*, 134 Ill. 57; *Kelley* v *Wilson*, 21 Ill. App.
141; *Quincy Coal Co.* v. *Hood*, 77 Ill. 68; *U. P. R. R. Co.*
v. *Jarvi*, 3 C. C. A. 433, 53 Fed. Rep. 65; *Reddon* v. *U. P.
Ry. Co.*, 15 Pac. 262; *Anderson* v. *Bennett*, 16 Or. 515;
*Slater* v. *Chapman*, 67 Mich. 523; *Pantzar* v. *Tilly Foster
Co.*, 99 N. Y. 368; *Chicago* v. *Sobkowiak*, 34 Ill. App. 312;
*Hall* v. *St. F. Water Co.*, 48 Mo. App. 356; *Ryan* v. *Baga-
ley*, 50 Mich. 179; *Doyle* v. *Baird*, 6 N. Y. S. 517; *Truhay*
v. *Brooklyn L. M. Co.*, 11 Pac. 612.    Nor would the court
have sent back for a new trial the case of *Kelley* v. *Cable*, 7
Mont. 73.    There must be an error somewhere, either in these
cases or in the argument of counsel.    The respondent submits
that it may be readily found in the latter.

The rule appealed to is accurately stated in the case of *Ar-
mour* v. *Hahn*, 111 U. S. 313, cited by appellant.    "The
obligation of a master to provide reasonably safe places and
structures for his servants to work upon does not impose upon
him the duty, as towards them, of keeping a building which
they are employed in erecting, in a safe condition at every
moment of their work, so far as its safety depends upon the
due performance of that work by them or their fellows."    It
becomes therefore, a matter of vital importance to inquire
whether Sheehan was a mere fellow servant or whether he was
the representative *pro hac vice* of the defendant.    The appel-
lant's discussion of this question omits wholly the considera-
tion of a principle of controlling importance which is clearly
elucidated in the case of *State* v. *Matster*, 57 Md. 308, cited in
its brief, and expressed by the standard text writers as follows:
" One to whom his employer commits the entire charge of the
business, with power to choose his own assistants, and to control
and discharge them as freely and fully as the principal himself
could, is not a *fellow servant* with those who are employed
under him, and the master is answerable to all under-servants
for the negligence of such a managing assistant, either in his

personal conduct within the scope of his employment, or in his selection of other servants.'' (Shearman & Redfield on Negligence, 102.) The language last above cited is quoted as the law or the principle it asserts expressly approved in the following cases: *Woods* v. *Lindvall,* 1 C. C. A. 37-47, S. C. 143 U. S. 202; *Brown* v. *Sennett,* 68 Cal. 225; *Beeson* v. *G. M. G. M. Co.,* 57 Cal. 31; *City* v. *Mulcairns,* 67 Wis. 24; *Cunningham* v. *U. P. Ry. Co.,* supra; *Brown* v. *Gilchrist,* 45 N. W. 83; *Slater* v. *Chapman,* 67 Mich. 523; *Wall* v. *Louisville Ry. Co.,* 28 N. E. 611; *Dayharsh* v. *H. & St. F. Ry. Co.,* 103 Mo. 570; *Rima* v. *Rossie Iron Works,* 120 N. Y. 433; *Bennett* v. *Anderson,* 16 Or. 515; *Cox* v. *Syenite Granite Co.,* 39 Ill. App. 424; *Hunn* v. *Michigan Central,* 78 Mich. 513; see also Wharton on Negligence, 229; Thompson on Negligence, 1028, § 34; Cooley on Torts, 665 (2nd Edition). The management of appellant's entire business was entrusted to Sheehan.

The court submitted to the jury whether he was a vice-principal. They found that he was. This was unnecessary. The law made him such. Debate on the question is foreclosed in this court by the decision in *Kelley* v. *Cable Co.,* 7 Mont. 73. ''It is a part of the personal duty of the master to give direction to the work he undertakes, and to prescribe a system for conducting it. This may be done by rules when necessary, or by the personal guidance of managers and foremen. In doing so the master must use ordinary care for the safety of his employes.'' (*Schroeder* v. *C. & A. R. Co.,* 108 Mo. 322; *Hunn* v. *Michigan Central,* 78 Mich. 513; *Anderson* v. *Bennett,* 16 Or. 515.) From which it would follow, even on the line of argument of appellant, that Sheehan was the vice-principal with reference to the omissions charged against it.

The respondent contends that the defendant did not discharge the duty it undertook; that it should have put in a whole set or a half set instead of a stull. That it was the duty of the defendant to put in or direct the putting in of a half or a whole set, if in the conduct of good mining such protection would have been reasonable, does not admit of question. It

certainly was not incumbent on Kelley to do so when Sheehan directed a stull to be put in, in view of the rebuke he received and the promise made him when he before ventured to express his opinion of what ought to be done. His primary duty was obedience, and he was not expected nor permitted to set up his judgment or opinion against the direction of the master. (*Harrison* v. *D. & R. G.*, 27 Pac. 728.) Moreover, he was entitled to rely on the supposed superior knowledge of his master. (*Shortel* v. *City*, 24 Am. St. Rep. 317, and note.)

As to the accumulation of debris in the tunnel the question is: "Did the master do everything which in the exercise of reasonable and ordinary care and prudence, he ought to have done," or, "Did he omit any precaution which a prudent and careful man would take, or ought to have taken." (*Pantzar* v. *Tilly Foster Co.*, *supra.*) The plaintiff assumed those risks alone which cannot be obviated by the adoption of a reasonable measure of precaution by the master. (Id.) In the ordinary conduct of running a tunnel there must be at times an accumulation of debris therein. The risks attendant on such ordinary accumulation, plaintiff assumed, but he did not assume any increased risk consequent on the defendant's permitting it to accumulate in amount beyond what would be found there in the orderly conduct of the business with regard to the safety of the plaintiff and his associate. There is no possibility of confounding the law of this case with the principles announced in *McAndrews* v. *Montana U. R.*, 15 Mont. 290. There the danger was patent, unmistakable. Promise or no promise, he should not have attempted to run the handcar across the bridge.

Instruction No. 5 was copied from *Hough* v. *R. Co.*, 100 U. S. 213, and is therein declared to be the law. It comes originally from Shearman & Redfield on Negligence, 96 (3rd Ed.), and has been adopted by the courts generally as the correct expression of the rule. The very language will be found in *Rothenberger* v. *Milling Co.*, 59 N. W. 531, in *N. F. R. Co.* v. *Young*, 49 Fed. 723 (1 C. C. A. 428), and in *Stephenson* v. *Duncan*, 73 Wis. 407, and the text is referred to in

nearly every case dealing with the proposition. The language used by Judge Cooley is certainly as favorable to the servant. (Cooley on Torts, 559 and note.) And the rule is frequently declared in terms implying an absolute guarantee on the part of the master. (*Patterson* v. *R. Co.*, 76 Pa. Rt. 389; *Gulf R. Co.* v. *Wells*, 16 S. W. 1025; *Lyttle* v. *Chicago, etc.*, 47 N. W. 571; *Green* v. *Minn., etc.*, 31 Minn. 248.) It will be observed that the instruction does not say, as seems to be authorized by these cases, that the servant "must," but that he "may" recover. It is unquestionably true that if the danger is "so eminent that no one but a person utterly reckless of his personal safety would venture upon it, the master is not responsible," even though he promised to repair the defect.

PEMBERTON, C. J.—In this case the court instructed the jury that "it was the duty of the defendant to adopt all reasonable means and precautions to provide a safe place for the plaintiff in which to prosecute his work."

The defendant assigns this as error. Counsel for the defendant contends that, while this instruction states the law in ordinary cases, it is not applicable to this case. His contention is that the plaintiff was not working in a place, but was working in the creation of a place.

The evidence in this case is that the plaintiff was employed, at the time of the accident, in running a tunnel in defendant's mine. He was doing this work under the immediate supervision and direction of John Sheehan, the foreman and manager of the mine. Sheehan was not working in the mine with plaintiff. The plaintiff was not engaged in creating a place, on his own judgment, and at his own risk. He assumed the risks naturally attendant upon driving the tunnel. It was the duty of defendant to keep that part of the tunnel or place already created safe, by whatever reasonable means were necessary. If the plaintiff had been injured while in the actual work of drilling or blasting in the face of the tunnel he was driving, he may have had no claim on the defendant for damages; for these were risks he assumed as a miner. But he did

not assume the risk of defendant's failure to keep that part of the tunnel or place already created reasonably safe and secure. For instance: If a stone or material blasted or dug from the tunnel by plaintiff should have been blown against, or should have fallen upon, him, he would have had no remedy against defendant for any injury sustained thereby. This is a risk belonging to his employment, and which he assumed. But he did not, by his employment as a miner in driving the tunnel, assume the risk of the failure of the defendant to take such reasonable precautions as were requisite to prevent the caving and falling of the roof of that part of the tunnel already created, upon him, while engaged in his work. Nor did he assume the risk of the failure of the defendant to keep the floor of the tunnel so free from rock and debris as not to materially hinder or obstruct his escape from his place of work, in case of accident, such as occurred in this case, or might occur by premature or unexpected explosions of the dangerous materials he was using in his work. He assumed the risks incident to the work in front of him, and not the risks of defendant's failure to properly care for that part of the tunnel or place behind him, which he had completed, and turned over to the care and control of the defendant. The authorities cited by defendant's counsel, we think, are not applicable to the case at bar. The conditions and facts in the cases cited are dissimilar from those of this case. We do not think the plaintiff, at the time he was injured, was engaged in creating a place, or rendering a dangerous place safe, within the meaning of the cases cited by defendant's counsel. In *Union Pacific Ry. Co.* v. *Jarvi*, 3 C. C. A. 433, 53 Fed. 67, the court says: "It is the duty of the employer to exercise ordinary care to provide a reasonably safe place in which his employe may perform his services." This was a case in which a miner was suing for injuries sustained in a mine by reason of a failure on the part of the employer to provide a "safe place" to work. The decision is a late one, having been rendered in October, 1892. It collates a large number of authorities, and contains an able and exhaustive discussion of the law governing this class of cases.

We think it clear, beyond question, that it was the duty of the defendant in this case to provide a reasonably safe place for the plaintiff to work in.   To hold otherwise would not be in accordance with authority, sound public policy, or justice. (*Cunningham* v. *Union Pac. Ry. Co,* 4 Utah 206; 7 Pac. 795; *Beeson* v. *Green Mt. G. Mining Co.,* 57 Cal. 20; *Consolidated Coal Co.* v. *Wombacher,* 134 Ill. 57; *Quincy Coal Co.* v. *Hood,* 77 Ill. 68.) See, also, authorities cited in *Union Pacific Railway Co.* v. *Jarvi, supra*; *Mather* v. *Rillston,* 156 U. S. 391. The cases cited above are those in which damages were sought to be recovered for injuries sustained in mines.   They might be multiplied many times.   They all hold it to be the duty of the employer to provide a reasonably safe place in which the employe may perform his service, and a failure to do so actionable negligence.

Counsel for defendant contends that the evidence shows that the plaintiff so far contributed, by his own negligence, to his injuries, as to defeat his right of recovery in this case.   The plaintiff testified that he assisted in putting the timbers in the mine, by direction of Sheehan; that he had not done any timbering in the mine before; that his business was blasting and drilling in the face of the tunnel; that, when he asked Sheehan if he did not think the mine needed timbering, Sheehan said he would attend to that, that he was there and knew his business, having been timberman in the Moulton for five years. Afterwards, Sheehan sent the carman, who was employed at odd jobs as well as running the car, to assist in putting in the timbers.   After this, plaintiff and his partner put in the stull. This was put in under the directions of Sheehan.

On the part of defendant, there is evidence that it was part of plaintiff's duty to timber the mine.   This is disputed.   It nowhere appears that plaintiff, or his working partner, or the carman, understood timbering.   Whether the stull was properly placed in the mine is a disputed question.   Nor is it shown that the stull, if properly put in, was sufficient to support the roof; at least, it is a disputed matter.   It is a mooted question whether the mine should not have been protected by full sets

of timbers, or, at least, other kind of timbers, at the place where the accident occurred. The evidence shows that the other timbers put·in near the stull did not fall when it did. Nor is it improbable that the stull was displaced by the blasts of the afternoon before the accident. Plaintiff testifies that, after the stull was put in, Sheehan came into the mine and tested it with a two-handed hammer. This, Sheehan denies. Sheehan says, in his testimony, that he did not examine the timbers or stull particularly; he just glanced at them as he passed by; that he just held up his candle and looked at the stull as he went through.

From this evidence, it appears that defendant did not use proper care in procuring competent men to timber the mine; that Sheehan, defendant's manager, was guilty of negligence in not properly inspecting these timbers after they were put in the mine. In *Union Pacific Ry. Co.* v. *Jarvi, supra*, it is said : " Of the master is required a care and diligence in the preparation and subsequent inspection of such a place, as a room in a mine, that is not, in the first instance, demanded of the servant. The former must watch, inspect, and care for the slopes through which and in which the servants work, as a person charged with the duty of keeping them reasonably safe would do."

Witness Donan, a miner of considerable experience, says that the tunnel, according to the rules of careful mining, should have been timbered every four feet, with full sets of timbers, on account of the character of the rock and ground in the tunnel. This, of course, was not done. He says the tunnel was not sufficiently timbered to hold the roof. Sheehan, himself, testifies that the roof and sides were "drummy," by which he evidently means not solid and strong.

We think the evidence was sufficient to warrant the jury in believing that the mine was not sufficiently timbered to prevent caving, and that defendant did not use proper care in selecting competent timbermen to do the work. Plaintiff testifies that, as to the mine being safely and sufficiently timbered, he took Sheehan's assurance that it was safe, and had no ap-

prehension whatever. As to the timbering of the mine, the most that can be charged as negligence on the part of the plaintiff is that he did not properly put in the stull. But the evidence is not conclusive, by any means, that the cave occurred on account of the stull being improperly placed. It is not an illegitimate inference, from the evidence, that the cave would have occurred however well the stull might have been put in. It is a fair inference from the evidence that the stull was not sufficient to support the roof of the mine, and that the cave occurred for want of sufficient timbering. And it may not be improper, in this connection, to remark that the evidence discloses the fact that Sheehan stated that his instructions were to run the mine with as little expense as possible. Certainly, the evidence does not disclose any extravagance in placing timbers in the mine, or in securing competent men to do the work. We do not think the evidence discloses such contributory negligence on the part of plaintiff as to defeat his right to recover, as contended by defendant.

The court instructed the jury as follows : "If you find from the evidence that the danger of the place in which the plaintiff was working was increased by reason of the accumulation of rock in the drift behind him, in excess of what would ordinarily accumulate in the conduct of the business properly managed (if you find that there was such accumulation in the drift); and you further find that he called the attention of the foreman to the amassing of such rock and debris, and requested him to have the same removed, and the foreman expressly promised to do so,—the plaintiff was justified in continuing at work, notwithstanding his danger was increased by such accumulation, for such period of time after the promise as it would be reasonable to allow for its performance; and, for any injury suffered within any period which would not preclude the reasonable expectation that the promise might be kept, he may recover."

Counsel for defendant assigns the giving of this instruction as error, and claims that it is in conflict with the views of this court as expressed in *McAndrews* v. *Montana Union Ry. Co.*,

15 Mont. 290. The instruction under consideration is in harmony with the law as declared by the supreme court in *Hough* v. *Railway Co.*, 100 U. S. 213. In *McAndrews* v. *Montana Union Ry. Co.*, *supra*, this court said : "But this rule is a qualified one. If the machinery is not only defective, but so obviously dangerous that no ordinarily prudent man would assume the risk of using it, and the employe does use it, knowing its absolutely and obviously dangerous condition, and the dangers of using it, the master is not liable, notwithstanding the promise to remedy the defect. This qualification to the rule is well stated in *Indianapolis, Etc., Ry. Co.* v. *Watson*, 114 Ind. 20, 14 N. E. 721, and 15 N. E. 824, in the following language : 'Where an employe knows that the danger is great and immediate, such as a reasonably prudent man would not assume, he cannot recover for an injury, even though he remained in the employer's service in reliance upon the latter's promise to remedy the defects which produced the danger.' "

The facts of the case at bar widely distinguish it from the McAndrews case. McAndrews was using a car which he knew to be absolutely and obviously dangerous. He not only used it for a long time, knowing its dangerous condition, but, at the time he was injured by the car, he was using it in a reckless manner. Under such circumstances, we held he could not rely or recover upon the promise of the foreman to get a new car.

In this case, there is no evidence or pretense that the danger of the mine caving at the time of the accident was obvious, absolute, or immediate, and that plaintiff knew of such danger, or that a reasonably intelligent and prudent man, under like circumstances, would have apprehended such danger to himself. The plaintiff testifies that the assurances of Sheehan as to the safety of the mine were such that he apprehended no danger whatever. Under such circumstances, by relying upon the express promise of Sheehan to remove the debris from the tunnel, and continuing at work for a reasonably sufficient time for the performance of such promise, he was not guilty of

such contributory negligence as to defeat his right of recovery. We do not think, therefore, that the court erred, under such circumstance, in instructing the jury that, "for any injury suffered within any period which would not preclude the reasonable expectation that the promise might be kept, he [plaintiff] may recover." In view of the facts, we think the instruction properly declared the law.

In *Union Pacific Ry. Co.* v. *Jarvi, supra,* it is said: "The degrees of care required of the master and servant also differ, because defects in a piece of machinery or in the roof of a mine that to the eye of a competent inspector, such as the master employs, portend unnecessary and unreasonable risks and great danger, may have no such significance to a laborer or miner who has had no experience in watching or caring for machinery or roofs or slopes in a mine; and the latter is not chargeable with contributory negligence simply because he sees or knows the defects, unless a reasonably intelligent and prudent man would, under like circumstances, have known or apprehended the risks which those defects indicate. The dangers, and not the defects merely, must have been so obvious and threatening that a reasonably prudent man would have avoided them, in order to charge the servant with contributory negligence." And see authorities cited in that case.

Counsel for the defendant insists that the instruction should have been in accordance with the modified rule laid down in the McAndrews case. But, as we have seen, there was no evidence in the case calling for this modification. Nor does the record disclose that counsel sought in any way to have the instruction modified, in this respect or any other, by the court. We do not think the instruction could be held to be erroneous because it did not state all the law, or all the law under all circumstances and every state of facts, and because it was not modified so as to meet all circumstances and questions of fact, especially where the other instructions fully cover the law of the case. (*Grant* v. *Varney,* (Colo. Sup.) 40 Pac. 771; *Shumard* v. *Johnson,* (Tex. Sup.) 17 S. W. 398; Elliott's App. Proc. § 730.)

Counsel for defendant contends that by this instruction the court determined, as a matter of law, that the plaintiff was justified in continuing at work after Sheehan's promise to remove the debris, without leaving it for the jury to determine whether he was justified in so doing, under all the circumstances. The only circumstances and facts that would have rendered it contributory negligence for him to remain at work after this promise would have been the obviously absolutely dangerous condition of the tunnel. As we have said before, there was no evidence of such condition to which the court could have called the jury's attention, or submitted to the jury for consideration. We are unable on this account to discover any defect or error in the instruction. In other instructions the court plainly told the jury that plaintiff could not recover if the evidence showed him to be guilty of contributory negligence. Upon this question, the court instructed the jury as follows: "A man cannot shut his eyes to a fact, he cannot shut his eyes to a danger, and then ask for damages for an injury received from that danger." The substance of this instruction is repeated, with emphasis, in other parts of the charge to the jury. The instructions of the court, taken as a whole, fully and fairly stated the law applicable to the case, to the jury. We do not discover that they were conflicting or misleading in any respect. The instructions fully stated the law of negligence to the jury, and, we think, were remarkably fair, as a whole, to the defendant.

We do not think it necessary or profitable to consider in detail the many technical objections to the instructions raised by counsel for the defendant.

Considering the whole case, we think it clearly appears that Sheehan was the vice-principal of the defendant corporation. He employed and discharged the employes. He supplied the mine with materials and implements for its development. He had full control of the property, the employes, tools, materials, and complete charge of the management and development of the mine. No officer of the corporation, or other person or agent, had anything to do with it, or was ever present at the

mine.  Under such circumstances, it cannot be disputed that he was the legal representative of the defendant corporation. We think the evidence shows he was guilty of negligence in not sufficiently timbering the tunnel where plaintiff was working and received his injuries, and in not procuring competent timbermen to do the work.  He was guilty of negligence in not keeping the floor of the tunnel so free from debris as not to materially delay, hinder, or obstruct escape by the plaintiff from the place of his work, in case of accident.  Sheehan being the vice-principal of the defendant, his negligence was its negligence; and it is, and should be, held liable for whatever injuries plaintiff sustained by reason thereof.

The judgment and order appealed from are affirmed.

*Affirmed.*

De Witt, J., concurs.  Hunt, J., having tried this case as district judge, did not participate in this decision.