JAMES CONNOR *vs.* J. ELLIS WHITE, City Treas.

MAY 9, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Master and Servant.   Safe Place Rule.*

The common law duty to furnish the servant with a reasonably safe place in which to do his work, is subject to the exception that when the place and the conditions with regard to safety are constantly changing as work progresses and the workman makes the place in which to do his work as one of the incidents of his employment, the rule as to the master's liability does not apply, and in such circumstances the master is not required to follow up the work in all its stages and see that precautions are constantly taken for the protection of the servant, but it is the master's duty to furnish the servant with suitable material which he may use for his own protection and to use reasonable care in the selection of the servant's fellow workmen and if one is required to use reasonable care in the appointment of a foreman.   It will be regarded as part of the servant's contract of employment that he accepts such method and the possibility that the servant may be injured through the carelessness of his foreman or of a fellow servant in the means used to make the place of such employment safe is one of the risks which the servant assumes.

*(2)   Master and Servant.   Safe Place Rule.*

A construction gang had completed its work of excavating and sheathing a trench, and two days later plaintiff was sent into the trench to lay sewer pipes.   There was evidence warranting the jury in finding that the construction gang had been negligent in sheathing the trench; that a considerable time had elapsed after that negligence before plaintiff was sent to work there and that during that period the master had been in full control with ample opportunity to discover and remedy any defect.

*Held,* that in such circumstances the master should be held to have adopted the trench as constructed and to have furnished it to the servant as a completed structure in which to carry on his work, and in doing so it was the duty of the master to use reasonable care to see that the trench was in suitable condition for such use.

VINCENT, J., dissenting.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant and overruled.

SWEETLAND, J.   This is an action of trespass on the case for negligence brought against the defendant as City Treasurer of the city of Pawtucket to recover damages for personal injuries alleged to have been received by the plaintiff through

the negligence of the city of Pawtucket while the plaintiff was at work as an employee of the water department of said city.

The case was tried in the Superior Court before Mr. Justice Rathbun sitting with a jury and resulted in a verdict for the plaintiff. The defendant duly filed his motion for a new trial which was denied by said justice. The case is before us upon the defendant's exception to the decision of said justice on the motion for new trial, and upon exception to the ruling of said justice denying the defendant's motion for the direction of a verdict in his favor made at the conclusion of the evidence.

The evidence was conflicting upon many of the essential facts in the case. There was evidence from which the jury might have found the following. At the time of the accident which resulted in injury to the plaintiff the city of Pawtucket was installing an extensive addition to its system of water supply. As a part of this larger undertaking it was engaged in laying water pipes in Webb street in said city. To lay said pipes it was necessary first to construct a ditch in said street about thirty-five feet long, seven feet deep and four feet wide. The soil on Webb street at the location of said ditch is largely composed of sand which has a tendency to run or shift, especially when exposed to the air and sunlight. The condition of this soil was well known to said city. A regard for the protection and safety of men whose employment required them to work at the bottom of a trench seven feet deep, in soil of this character, required that each side of the ditch should be supported by sheathing consisting of planks of suitable strength set vertically and close together against the soil. Against this vertical planking on each side of the trench there should be fixed two lines of planks, called rangers, placed horizontally. One line of rangers should be just below the surface of the ground, and the other three or four feet above the bottom of the trench; each line of rangers should be held in position and braced against the upright planking by means of strong timbers

placed at intervals across the trench. The stability of such shoring would in a measure depend upon the constant pressure of the soil against the vertical planking, causing the lines of rangers and the cross braces to remain securely in place. If, by reason of the tendency of said sand to run or shift, the constant pressure of the soil against the upright planking should be removed or interfered with at any point there would be great probability that the braces and the rangers at such place would fall from place and down into the bottom of the trench. To keep such pressure constant. it is required that men should from time to time tamp down the soil against the outer side of the sheathing on each side of the trench. In such a trench the use of one rather than two lines of rangers upon each side would constitute faulty and unsafe construction in soil of this character. Although the fact was denied by a number of witnesses presented by the defendant, there was testimony from which the jury might find that in the construction of the shoring of the ditch in question at the point where the injury to the plaintiff occurred there had been but one line of rangers placed on each side of said trench. The pipe laid by the city at the bottom of the trench consisted of sections twenty-four inches in diameter and six feet long, each section weighed about twelve hundred pounds. These sections were lowered into the bottom of the trench by means of a heavy derrick placed across the trench. The derrick was supported upon four legs, two of which rested upon planks on each side of the trench. Each section of pipe was smooth at one end and had a flange or bell at the other. The line of pipe was constructed by placing the smooth or spigot end of each section into the bell end of another. The joint formed by the connection of two sections was made water-tight by pouring molten lead into a form or mold clamped around said joint. To prevent said molten lead from running through a joint and into the inside of the line of pipe, said joint was first caulked with yarn. On the day of said accident the plaintiff was engaged in so caulking said joints. At the time of the accident the plaintiff was at the

bottom of the trench, stooping under one of said cross braces, leaning with the front part of his body against the bell end of a section of pipe which had been laid, and with a piece of yarn was cleaning the dirt from said bell end; thus preparing it to receive the spigot end of the next section of said line of pipe which was being swung by said derrick into the bottom of the trench. While the plaintiff was in this position, the cross brace just above him became loosened, and it and some portion of the rangers, sheathing and soil fell from their places upon him, crushing him against said flange or bell and injuring him in various parts of his body. Said trench and shoring had been constructed by a force of workmen in the employ of said city, which force was distinct from that engaged in laying said pipe. Said trench and shoring had been completed some time before the day of this accident; and the construction gang had been sent to work elsewhere. The trench in its completed condition had been in the possession of the city for at least two days before the plaintiff and his fellows had been set to work laying the pipe.

The accident occurred in October and the jury might find that the sandy soil which formed the sides of the trench had been rendered mobile by the drying action of the sun and air during the time from the completion of the trench until the accident in question; that the sheathing at the sides of the trench was not securely and properly braced; and that the pressure of the soil against the upper part of the sheathing caused the lower portion to be pressed outward loosening the cross brace above the plaintiff. There was also testimony from which the jury might find that after the construction of the trench care had not been taken to keep the soil firmly against the outer side of the sheathing and in consequence the constant pressure of the flowing or shifting soil had not been maintained against the sheathing, rangers and braces, whereby the braces became loosened permitting the timbering and some portion of the soil to fall upon the plaintiff. The former of these possible findings would show

a lack of care in the construction of the trench, the latter would indicate neglect in maintaining the trench in a safe condition to be used by the workmen engaged in laying the water pipe.

(1) The contention of the plaintiff is that the evidence establishes a disregard on the part of the city of Pawtucket of its common law duty to furnish the plaintiff a reasonably safe place in which to do his work. This rule of the common law, however, is not without exceptions and qualifications. A generally recognized exception is that when the place and the conditions with regard to safety are constantly changing, as a work progresses, and the workman makes the place in which to do his work as one of the incidents of his employment, the so-called "safe place" rule as to a master's liability does not apply. In such circumstances the master is not required to follow up the work in all its stages and to see that precautions are constantly taken to protect the servant from injury. It is the master's duty to furnish the workman with suitable material which he may use for his own protection and to use reasonable care in the selection of the servant's fellow workmen. If one be required, the master must use reasonable care in the appointment of a foreman. That is the manner in which work of this character is ordinarily carried on; and it will be regarded as part of the servant's contract of employment that he accepts such method. In such work the possibility that the workman may be injured through the carelessness of his foreman or of fellow workmen in the means used to make the place of such employment safe is one of the risks which such servant assumes. The defendant relies upon this exception to the general rule in the case at bar. This court has recognized the doctrine just referred to in *Laporte* v. *Cook*, 21 R. I. 158 and *Laporte* v. *Cook*, 22 R. I. 554. It has been applied frequently in other jurisdictions in cases involving injury to workmen while engaged in the excavation of trenches or while at work in trenches that were being excavated. In the case at bar it must be said that the plaintiff's injuries were not received

(2) in either of those circumstances. The plaintiff was not connected with the work of excavating or sheathing the sides of the trench, nor was he employed in the trench while it was being prepared, nor did his work follow immediately after that of construction. The construction gang had completed its work and had gone elsewhere; whether to work on some other portion of this water system the evidence does not disclose. The trench in its completed condition passed into the sole care and control of the city and so remained for at least two days before the plaintiff and his fellows were set to work there. In *Curley* v. *Hoff*, 62 N. J. L. 758, the court was considering the case of a bricklayer who had been at work building a brick sewer at the bottom of a trench while the work of excavating and sheathing the trench proceeded. In that situation he had been injured as the result of a blast made by the workmen who were carrying on the work of excavation. The court held that in those circumstances the master was not liable, but in the course of its discussion of the case said that it could "conceive of cases where a servant following up work of other servants of the same master may be injured through the result of their negligence and yet have a remedy against the master for neglect of duty to use reasonable care to provide a safe place for working." Is such a case presented in the circumstances of that at bar? Would it be reasonable to hold that a master, engaged in an undertaking as extensive as that which the city of Pawtucket was carrying on, could at its beginning relieve himself from all further care for the safety of his workmen, in every stage and condition of the work, by the appointment of a competent foreman and by placing suitable material at their disposal? The exception, which we have stated to the general rule as to the master's duty, only arises when the condition of the work, the place in which it is to be carried on, and the dangers which attend its prosecution are changing from time to time, and one of the incidents of the work is to create the place in which it shall be done. In such circumstances it is not unreasonable to require the

servant, when furnished with suitable material for that purpose, to protect himself from the varying dangers which he himself is creating. When these circumstances do not exist no basis is furnished for the exception to the general rule now under discussion.

In the case at bar the place in which the plaintiff and his fellows were set to work on the day of the accident was not constantly changing as their work progressed. In no sense can they be said to be creating a place in which to work as one of the incidents of their employment; nor were they called upon to take measures for their own protection. From the evidence the jury would be warranted in finding that the construction gang had been negligent in sheathing the trench; that a considerable time had elapsed after that negligence before the plaintiff was sent to work there; that during that period the city of Pawtucket had been in full control of the trench with ample opportunity to discover and remedy any defect therein, and to maintain it in a safe condition. In such circumstances the city should be held to have adopted the trench as constructed and to have furnished it to the plaintiff and his fellows as a completed structure in which to carry on their work. In doing so it was the duty of the city to use reasonable care to see that said trench was in suitable condition for such use. The evidence presented fair questions to be submitted to the jury upon those issues. Those issues if found in favor of the plaintiff warranted the application of the rule laid down by this court in *Sjoberg* v. *Harding Construction Co.*, 37 R. I. 133. *Kranz* v. *Long Island Ry. Co.* 123 N. Y. 1, is a case somewhat similar in its facts to that at bar. In that case the plaintiff's intestate, a machinist in the employ of the defendant, was set to work upon water pipes at the bottom of a trench which had been opened some hours before by other workmen in the employ of the defendant. While the plaintiff's intestate was so employed the sides of the trench which had not been properly braced caved in upon him and he was killed. The court held that its decisions were adverse to the

view that those who opened the trench were fellow servants of the intestate and their negligence, if any, was one of the risks which the deceased assumed. The court said, "When the master ordered the intestate to perform work as a machinist in the trench opened and prepared for him he had a right to assume that the place had been made reasonably safe by the master through other and competent servants employed by him." The opinion of the court in *McCoy* v. *Northern Heating & Electric Co.*, 104 Minn. 234, is to the same effect with regard to the duty of a master who sets a servant at work in a trench which has been previously constructed by other servants of the master. *Baird* v. *Reilly*, 92 Fed. 884, involved the case of a plaintiff who had nothing to do with the cutting of a trench but was one of a gang set to lay water pipes therein. By reason of defects in construction due to negligence of the construction gang and its foreman the trench caved in and the plaintiff was injured. The court held that in these circumstances the master was not relieved of his duty to provide a reasonably safe place where the plaintiff should do his work. In *Hanley* v. *California Bridge and Construction Co.*, 127 Cal. 232, the facts were that the defendant was engaged in constructing a tunnel into the face of a rocky bluff. The plaintiff, in the employ of the defendant, while at work removing debris from the floor of the tunnel was injured by the falling of a rock from the side of the tunnel. In the course of its construction the face of the tunnel, moving forward into the rock, had passed the place, where the plaintiff was injured, three or four days before the accident. In these circumstances the court held that the place where the rock fell should be regarded as a completed tunnel and "became an appliance or means furnished by the master by which the remaining work is to be prosecuted." The court further held that the ordinary rule of the master's obligation should be applied in favor of the plaintiff at work in such a completed portion of the tunnel. In somewhat similar circumstances the same rule was applied in *Kelley* v. *Fourth of July M. Co.*, 16 Mont. 484.

The defendant's motion for the direction of a verdict in his favor was properly denied. There was evidence upon the issues in the case which was properly submitted to the jury. The jury was very carefully and correctly instructed with reference to the law applicable to the questions referred to it. The jury's verdict has been approved by said justice. Upon an examination of the evidence we find no error in the decision of said justice denying the defendant's motion for a new trial.

The defendant's exceptions are all overruled. The case is remitted to the Superior Court with direction to enter judgment upon the verdict.

VINCENT, J., dissents.

*J. P. Beagan, Thomas L. Carty*, for plaintiff.
*James G. Connolly, City Solicitor*, for defendant.