MR. JUSTICE SHEEHY,
dissenting:
I dissent and would affirm the District Court which found that the City of Missoula had not carried the necessary burden of proof in this cause.
I do agree with the majority that the statutes which apply to the acquisition of a private water supply system by a municipality and which apply in this case, are Sections 7-13-4403, 7-13-4404, MCA, and by reference in Section 7-13-4404, also the statutes relating to eminent, domain. The contention of the city, that under Section 7-5-4106, its ordinance authorizing the taking of the private water system of Mountain Water Company was conclusive is properly refuted in this cause.
The question of necessity in this case remains for determination by a court under eminent domain procedures. The statutes authorizing a city to operate a water supply system do not grant to a city council or commission the frightening power to take by itself conclusive action in condemning the property of another. I say frightening because city utilities may levy charges without regulation by the Public Service Commission, and may raise those charges up to 12% per year. Section 69-7-101, MCA.
I part from the majority in their determination of how the condemnation statutes are to be applied to this type of attempted condemnation, and from their determination that the District Court erred in considering the factors upon which it did rely that no necessity was shown here.
First, Section 7-13-4404, MCA, requires that when a municipality is unable to acquire a private water supply system by offering to purchase the same, then it may proceed to acquire the plant or water supply “under the laws relating to the taking of private property for public use.”
The majority say that public ownership versus private ownership is a factor of necessity to be considered in this case. Where the majority stray into error is their implicit assumption that the City of Missoula, as a governmental entity, stands in a better position as a condemnor for purposes of public use than Mountain Water Company, a private corporation. No such distinction is made in our statutes. Instead, in providing for eminent domain procedures, Section 70-30-102, MCA, enumerates what a public use is, and that the right of *416 eminent domain may be exercised in behalf of such public uses. Any entity, governmental, corporate, or private, which devotes property to a duty described as a “public use” under Section 70-30-102, has the further right to become a plaintiff in an eminent domain proceedings to acquire property for such public use. Thus, Section 70-30-203, MCA, provides that the plaintiff may be a corporation, association, commission, or person in charge of the public use for which the property is sought. The right of Mountain Water to condemn property when necessary is equal to the right of the City to condemn. This case is not the stage on which to debate public ownership versus private ownership of property. Public ownership of Missoula’s water supply system cannot be a factor of necessity, because all condemnors, whether public or private, stand on equal footing before the law in condemnation proceedings.
“Public use” includes flumes, ditches or pipes conducting water, heat or gas for the use of the inhabitants of any county, city or town. Section 70-30-102(3), MCA. The property that Mountain Water Company devotes to such public use is already “appropriated” to such use, though it may never have been acquired through condemnation proceedings. Under our statutes, if property is already appropriated to public use, whether or not it originated in such use by condemnation, such property is not thereby insulated from further condemnation. Though already appropriated to some public use, the property may be condemned if the public use to which it is to be applied after condemnation is a more necessary public use. Section 70-30-111, MCA.
As between the City of Missoula and Mountain Water Company, therefore, as entities using or proposing to use property for a public use, there is no distinction as to powers. Each has an equal right of condemnation, and if one desires to acquire property of the other that is already devoted to a public use, it must show by a preponderance of the evidence that the public interest requires a taking based on a finding that the “public use to which it is to be applied is a more necessary public use.” Section 70-30-111(3), MCA.
Thus, in this case, the burden of proof rested on the City of Missoula in its proceeding before the District Court, to establish by a preponderance of the evidence the fact question of greater necessity. That necessity is a fact issue to be proven has long been the rule in this state. State ex rel. Livingston v. District Court (1931), 90 Mont. 191, 196, 300 P. 916, 918.
When there are before the court two entities devoting or proposing *417 to devote the same private property to a public use, if the property is already devoted to a public use, the question of fact on necessity becomes, is the proposed use more necessary than its present public use? Section 70-30-111(3), MCA, is not limited to a situation where the condemnor proposes to devote the property to a different public use. A proposal to utilize the property for the same public use must still be found to be more necessary. That point was decided in Butte-Anaconda Pacific Railway Company v. Montana Union Railway (1895), 16 Mont. 484, 41 P. 248.
Before a court issues its preliminary condemnation order, the public interest in the taking is a factor for the court to determine as well as whether the condemnor, in this case, has proved that the taking is a more necessary public use. Section 70-30-206(2), MCA, provides:
“If the court finds and concludes from the evidence presented that the public interest requires the taking of such interest in real property and that the plaintiff has met his burden of proof under 70-30-111, it must forthwith make and enter a preliminary condemnation order . . .” (Emphasis added.)
If the findings of the District Court here are considered in the light of the proper construction of the condemnation statutes where the City is proposing to take over a private water supply system, it is clear that the findings and conclusions of the District Court in this case support its denial of a condemnation order. Unless the findings of fact of the District Court are clearly erroneous, we cannot set aside or ignore them. Rule 52(a), M.R.Civ.P. Those facts include the following:
Three private water companies presently supply water to Missoula, of which Mountain Water is one. Mountain Water serves 16,201 customers of which 4,481 live outside the city limits.
The court found that Mountain Water employs 26 people to operate its Missoula system and the smaller Superior, Montana, system. The city proposed to eliminate 6 of the present top jobs and replace them with city employees. The remaining 20 employees of Mountain Water would suffer drastic salary reductions because their pay scales would be based on city employees’ pay schedules and not that of the private employer Mountain Water. The city claimed a total savings of $280,639 per year because of the reduction of pay of 20 people for a total savings of $117,656 and the replacement of 6 people by present city employees for a savings of $162,983. The court found this proposal to be “personally and publicly catastrophic” explaining that some would leave their jobs, the key jobs would have the great *418 est cuts in pay and it was impractical to expect the city to accomplish, without cost to the city, the jobs of Mountain Water manager and other staff heads. The court further found that there was no evidence that public employment makes a public worker more efficient; and that Mountain Water’s present ratio between water connections and employees is lower than most similar water supply systems in Montana. He found loyalty in the present Mountain Water employees to their employer and satisfaction with their present working arrangements. If a complete disruption in the present management of the water system, the elimination of 6 management jobs, and drastic reductions in pay to the remaining 20 employees do not affect the public interest in Missoula in a dispositive way, public interest must have become a fiction to this Court.
The city claimed that during the first five years of its operation of the water system, water subscribers would enjoy savings of $3.5 million. The District Court found that the purported savings were based upon an unsupported assumption that the city could purchase Mountain Water Company for $11 million. The owner valued his property at $19 million. The city appointed no appraiser and offered during the hearing no appraisal of the fair market value of the Mountain Water system. The District Court found that the city could not guarantee that future city administrations would not increase water rates during the next five years because the city’s other assumptions were understated.
The city claimed that Rattlesnake Creek water was necessary to the operation, and that if it obtained the property, it would immediately install a filter plant for the elimination of giardia cysts. The cost of an adequate filter plant would be $4-5 million. However, the court found that such plants do not assure complete elimination of giardia cysts, and that well water, now produced by Mountain Water Company, was a better alternative to the cyst problem. The District Court also rejected the city’s claim that Rattlesnake Creek water had to be utilized to assure that the Missoula aquifer was not depleted. The court found that the aquifer under the Missoula valley was one of the best in the United States and is continually recharged.
Hence the city raised the issue of the Rattlesnake Creek water as a matter of necessity. The District Court is completely supported in the record that if such water should be used, a filtration plant would not safeguard against giardia cysts and its cost was not justified. The city having failed to prove its own issue, the majority now find *419 that it was irrelevant anyhow, and send the case back with the implicit direction to try something else. I leave it to others to explain that determination. Perhaps we will continue to reverse this case until the city gets it right.
This Court held in City of Helena v. DeWolfe (1973), 162 Mont. 57, 508 P.2d 122, that a claimed future need which is highly speculative will not support necessity and that the “necessity” for the taking must be shown as a reasonable need with foreseeable ability to complete the project.
The city claimed that it could eliminate Mountain Water’s $350,000 annual home office expense (its home office is in California). This purported savings was rejected by the District Court which found that the Mountain Water home office supports the Missoula operation by providing planning, finances, consultation, engineering and management for which the city would have to find a substitute.
The city claimed it could operate Mountain Water with $500,000 in yearly capital improvements. Mountain Water projects approximately $1.5 million each year for such improvements. The District Court found that Mountain Water projections of $500,000 for capital improvements was unrealistic.
If the city were granted condemnation, it would be required to finance the purchase by incurring bonded indebtedness. The city claimed its cost of finance would be cheaper for it than for Mountain Water. Again the District Court determined that if the fair market value of Mountain Water supply system fixed by the condemnation jury were between $11 million and $19 million, the entire economic projections of the city became untenable and any purported savings a myth. The majority opinion does not discuss this facet of the city’s case but it is clear that the court’s negative findings on the projected savings and operation were irrefutable.
The city claimed a reduction in the rates to the water users would result because the plant and property under a governmental entity would not be taxed. However, the District Court rejected this claim saying that the savings in property taxes would simply be shifted to other property tax payers, some of whom live outside the city in the county of Missoula. Moreover the District Court found that equity and debt financing used by Mountain Water were equally advantageous to water users.
There are a number of other-findings, but the foregoing suffice to show the District Court carefully considered the public interest in *420 the matter and determined under the facts shown, the city had failed to prove by a preponderance of the evidence that the taking was necessary. The District Court did not specifically refer to the term “more necessary” but its conclusion that the taking was not necessary under the facts more than supports the conclusion that the taking was not “more necessary.”
Finally this Court goes afield on a factor relating to necessity that is demonstrably improper. The majority contends that the fact that the city electors voted to take over the water supply system, or that the city council so acted, is a factor proving necessity. There is no statutory basis for such position. Section 7-13-4403, MCA, provides that the passage of the ordinance by the city council is simply notice to the owner of the water supply system that the city desires to purchase the water supply system. There is no provision in the statutes for a vote by the electors on whether a water system should be acquired by a city. The action of Missoula in submitting the matter to the voters was simply gratuitous. The majority opinion is silent as to any factor or facet of the necessity issue that would be proved or disproved by a vote of the city council or the city electors. The vote is irrelevant unless this Court is of the opinion that necessity is determined by majority vote.
Every salient factor found by the District Court which really relates to a “more necessary use” issue is approved in the majority opinion as supported by the evidence. They approved the findings on “public savings, on rates and charges, on cooperation between Mountain Water and the city, and on the effect of having Mountain Water’s home office in Missoula.” The majority agree that the District Court was correct with respect to Rattlesnake Creek water use. These (except for the effect on employees) are the only factors which relate to whether the city’s proposed condemnation is “more necessary.” On retrial the District Court must take these factors as already concluded. There is not much room left for the District Court to weigh the votes of the city and the council, out-of-state ownership, and whether a profit is sinful, as matters of public interest.
I am in the dark about the meaning of the majority relating to water rights. If the reference includes Rattlesnake Creek water rights held by Mountain Water, those rights have no place in this case in light of the majority finding of irrelevance. Only property “used and useful” to the operation can properly be condemned.
Whether considered by the viewpoint of “necessary,” or “more nec *421 essary,” the city’s case does not hold water. We should affirm the District Court.
HON. ROBERT W. HOLMSTROM, District Judge, sitting for