KALLIO, APPELLANT, *v.* NORTHWESTERN IMPROVEMENT CO. ET AL., RESPONDENTS.

(No. 3,249.)

(Submitted April 16, 1913.   Decided May 3, 1913.)

[132 Pac. 419.]

*Master and Servant—Personal Injuries—Coal Mines—Statutes —Construction—Safe Place—Duties of Employer and Employee—"Working Place"—Parties in Pari Delicto—Evidence—Custom—Inadmissibility.*

Personal Injuries—Coal Mines—Safe Place.
   1.   The rule that the master must exercise ordinary care and diligence to provide his employees with a reasonably safe place in which to work, though not applying where they are creating the place of work, when it is constantly being changed in character by their work, or when it only becomes dangerous by their carelessness or negligence, does obtain where the place is a completed one, such as that part of a mine tunnel lying behind the miner driving it, and is applicable to coal mines as well as to any other place of employment.
Same—"Working Place"—Coal Mine Act—Construction.
   2.   The "working place" which a coal miner must, under section 83 of the Coal Mine Act (Laws 1911, Chap. 120), examine before commencing to work and keep safe, is any place where he may be directed to work, and not merely the face of the entry or that portion of the walls or roof thereof which might be shaken by blasting.
Same—Duty of Inspection—Upon Whom.
   3.   Under the Coal Mine Act (Laws 1911, Chap. 120), it is the duty of both employer and employee to look after the safety of the place where mining is being done; and the fact that at a given time one of such places may not be the seat of active operations, and therefore subject to the exclusive inspection of the operator, does not absolve the miner from the duty of examining it when he is about to work there.

Same—Parties *in Pari Delicto*—Effect on Right to Recover.
   4.  Where neither defendant coal mine operator nor plaintiff, one of his employees, observed the statutory duty of inspection imposed upon them by the Coal Mine Act, the parties were *in pari delicto*, and plaintiff was therefore in no position to recover damages for an accident due to such nonobservance.

Same—Rule in Derogation of Act—Evidence—Inadmissibility.
   5.  *Held*, that the provisions of Chapter 120, Laws of 1911, designed to bring about a lessening of the hazards of coal mining, could not be nullified by any private agreement between employer and employee, or any rule or custom in derogation of the duties imposed by the Act; and therefore evidence of a rule that the miners employed by defendant were to examine and keep safe the entry in which they were working, for a certain distance from the face, the defendant to do the same beyond that point, was properly excluded.

*Appeal from District Court, Carbon County; Sydney Fox, Judge.*

ACTION by Oscar Kallio against the Northwestern Improvement Company and another. Judgment for defendants, and plaintiff appeals. Affirmed.

*Messrs. Walsh & Nolan,* and *Mr. Albert A. Callow,* for Appellant, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

The common-law rule requires the master to exercise reasonable care in providing for the servant a reasonably safe place, and requires the master to exercise reasonable care in the way of inspection to see that the place is kept reasonably safe. (*Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673.) While the servant in the present instance assumed the risk of dangers which were open and obvious, he was not required, and was under no obligation, to make tests by sounding the walls of the entry to ascertain whether any portion of them, on account of air-slacking, were loose and likely to fall. (*Schroder* v. *Montana Iron Works,* 38 Mont. 474, 100 Pac. 619; *Thurman* v. *Pittsburg & Montana C. Co.,* 41 Mont. 141, 108 Pac. 588; *Allen* v. *Bear Creek Coal Co., supra.*) If, however, in the operations carried on changes in the place were effected as the work was done so as to bring into existence dangers arising from the constantly changing conditions, as to such dangers the servant assumed the risk as an incident of his employment. (*Shaw* v.

*New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515.) If, however, the place was a completed one, not affected by the work carried on, then to such a place the duty of the master attached, and as to such a place the duty of reasonable care and inspection applied. (*Kelley* v. *Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273.)

We presume, however, that the ruling of the court was based on the assumption that the common-law rules above referred to were abrogated by the statute which the Twelfth Legislative Assembly passed, regulating coal mining operations. In most of the states where the cases have arisen, to which we will make reference, statutes were enacted as comprehensive as ours and practically along the same lines, and the courts held that the rules of the common law were not abrogated. (*Consolidated Coal Co.* v. *Bokamp,* 181 Ill. 9, 54 N. E. 567.)

The statute in question, in providing that the miners should see that the working place was reasonably safe, did not define what the working place was. Presumably the working place to which the statute referred was the working place respecting which the rules of the common law required the servant should take care of.

The supreme court of Oklahoma in the case of *Welty* v. *United States,* 14 Okl. 7, 76 Pac. 121, quoted with approval from the case of *Axhelm* v. *United States,* 9 Okl. 321, 60 Pac. 98, as follows: ''It is an elementary rule, in construing a statute containing words which have a fixed meaning at common law, and the statute nowhere defines such words, that they will be given the same meaning they have at the common law, and, so far as we have been able to find, there are no exceptions to this rule.'' In the case of *Stag Canyon Fuel Co.* v. *Rose* (Tex. Civ. App.), 145 S. W. 677, as in the case at bar, the workman was required to examine his working place. Nevertheless the court held that the rule of the common law as to the doctrine of the safe place applied. As sustaining this contention reference may be had to the following cases: *Consolidated Coal Co. of St. Louis* v. *Scheiber,* 167 Ill. 539, 47 N. E. 1052; *Big Hill Coal Co.* v. *Abney,* 125 Ky. 355, 101 S. W. 394; *Sloss-Sheffield Steel & Iron*

*Co.* v. *Green,* 159 Ala. 178, 49 South. 301; *McKenzie* v. *North Coast Colliery Co.,* 55 Wash. 495, 28 L. R. A. (n. s.) 1244; *Hemmingson* v. *Carbon Hill Coal Co.,* 62 Wash. 28, 112 Pac. 1111; *Central Coal & Coke Co.* v. *Williams,* 173 Fed. 337, 97 C. C. A. 597; *Tennessee Coal, Iron & R. Co.* v. *Garrett,* 140 Ala. 563, 37 South. 355.

But assuming that the statute in question is the sole and only standard to which reference must be had to measure and fix responsibility, there is nothing in the law which would render illegal a practice, either the result of custom or express agreement, by which the master would undertake to see that a certain portion of the entry should be inspected by him and another portion inspected by the servant. (*Edwards* v. *Lam,* 132 Ky. 32, 119 S. W. 175, 131 S. W. 795.)

*Messrs. Gunn, Rasch & Hall, Mr. W. M. Johnston* and *Mr. A. C. Spencer,* for Respondents, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

Appellant contends that the well-settled rules of common law, requiring the master to provide a safe place to work, have not been changed or modified by this statute; also, that the term "working-place" has a well-defined meaning at common law, and that the term as used in the statute means the same thing. In support of this latter contention he cites the cases of *Welty* v. *United States,* 14 Okl. 7, 76 Pac. 125, and *Axhelm* v. *United States,* 9 Okl. 321, 60 Pac. 98. The first of these cases holds that where a statute uses the word "murder" without defining it, the common-law definition of murder is intended. The latter case makes the same holding on the words "robbed" and "robbery."

We submit that the words "working place" have no definite meaning at common law, such as have the above terms. The "working place" depends upon the particular facts in each case. However, the statute in question removes any doubt that might otherwise exist as to the place of loading the car being a part of the miner's working place, as it expressly mentions the place of loading as a part of the place he must examine upon entering the mine.

The authorities cited by appellant in support of his contention that the statute in question here has not in any way abrogated the common-law rule as to a safe place to work do not construe statutes at all similar to ours. In the case of *Stag Canyon Fuel Co.* v. *Rose* (Tex. Civ. App.), 145 S. W. 677, it was a rule of the employer, and not a statute, that required the employee to inspect his working place, and which was held not to abrogate the master's common-law duty. It was also the force and effect of a rule of the master, and not of a statute, that was considered in *Consolidated Coal Co. of St. Louis* v. *Scheiber,* 167 Ill. 539, 47 N. E. 1052. As to the other cases cited by appellant on that question, we respectfully submit that they are not in point or at all applicable to the law and facts involved in this case.

Manifestly, it was the intention of the legislature to modify the common-law rules as to working places and the inspection thereof, so far as coal mines are concerned, by the enactment of such law. It is therefore the law and public policy of this state that the employees in coal mines must themselves perform certain duties intended for their better protection and safety, which at common law were required only of the master. This law has not entirely abrogated the master's duties along these lines, but has simply made it the duty of the employee as well as of the master. It is just as important to the welfare of the state, and to the many miners therein as a whole, that the employee strictly perform this mandatory duty imposed upon him by statute, as that the master perform his duties in this regard. Plaintiff did not perform the statutory duty imposed upon him. His negligence or failure to perform his duty as required by statute was a violation thereof and was the proximate cause of the injury, regardless of what the defendant did or omitted to do, and, under well-established principles, precludes plaintiff from recovering. (White on Personal Injuries in Mines, sec. 354; Thompson on Negligence, sec. 204; *Young* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 100 Iowa, 357, 69 N. W. 682.)

Can a mandatory statute be set aside or evaded by a custom or rule between individuals? Appellant seeks to relieve him-

self from the performance of his duty, imposed upon him by statute, of examining his working place upon entering the same, by offering evidence to show the existence of a custom whereby the mine operator agreed or assumed to perform a certain part of such duties and thereby dispense with the double inspection of the miners' working place provided for by statute. The only case cited in support of this contention is *Edwards' Admr.* v. *Lam,* 132 Ky. 32, 119 S. W. 175, 131 S. W. 795.    This case is clearly distinguishable.    There was an agreement between the master and employees whereby the latter were to employ a man to "shoot the mines."    There is nothing to show that any statute made it the duty of either the master or the employees to do such work.    Therefore, such an agreement did not relieve any person of a duty imposed by statute or violate any statute.

Appellant admits that upon entering the place where, in the performance of his duty, he was required to work in loading the car, he did not examine the place of work; also admits that if he had performed the duty thus imposed upon him by the statute, that he would have found the loose chunk of coal that injured him.    As he could not relieve himself of this duty, either by contract or custom, as is shown by the authorities below, it follows that evidence of such custom was properly excluded, and that, as a matter of law, he is not entitled to recover, and the judgment of the lower court should be affirmed.    (*Young* v. *Chicago, Milwaukee & St. Paul Ry. Co., supra; Voshefskey* v. *Hillside Coal & Iron Co.,* 21 App. Div. 168, 47 N. Y. Supp. 386; *Little* v. *Southern R. R.,* 120 Ga. 347, 102 Am. St. Rep. 104, 66 L. R. A. 509, 47 S. E. 953; *Missouri K. & T. Ry. Co.* v. *Roberts* (Tex. Civ. App.), 46 S. W. 270; *Smith* v. *Milwaukee Builders & Traders' Exchange,* 91 Wis. 360, 51 Am. St. Rep. 912, 30 L. R. A. 504, 64 N. W. 1041; *Chicago & E. R. Co.* v. *Lawrence,* 169 Ind. 319, 79 N. E. 363, 82 N. E. 768.)

MR. JUSTICE SANNER delivered the opinion of the court.

On July 12, 1911, the appellant was employed by respondent company as a coal miner in what is known as "west 5 entry, No. 2 vein, east side mine," at Red Lodge.    While loading coal

into a car in the course of his employment, a large piece of coal, which had without his knowledge become loose in the roof or walls of the entry, fell upon and seriously injured him; hence this action. He grounds his right to recover upon the allegations that an inspection and sounding of the roof and walls would have disclosed the presence of the loose coal; that it was the duty of respondents to inspect the roof and walls of the entry, and if any loose rock or coal existed to remove the same, and to timber such places along said entry where such timbering was necessary to prevent rock or coal from falling, and that such duty the respondents negligently failed to observe. In the answer it is alleged that the coal which the appellant was loading at the time he was injured was coal that shortly before had been blasted and broken from the face of the entry in the usual and customary manner; that he was loading the coal from the place where it had fallen and had been deposited by the force of the blast; and that, under the terms and conditions of his employment as a coal miner, it was his duty, and he was required, to look after and safeguard his own working place and see that it was in a reasonably safe condition; that he was required to provide for his own safety against the danger and risk from the falling of the roof and walls of the entry at his working place; that he failed to take precautions for his own safety and carelessly failed to examine the walls and roof to ascertain whether the same were safe and free from loose rock and coal liable to fall; and that the injuries received were due to his own fault. In the reply it was admitted that the coal the appellant was loading at the time he was injured had shortly before been blasted in the usual and customary manner, and that he was loading this coal from the place where it had been deposited by the force of the blast. He denied that it was his duty to look after the safety of the place where he was injured, or that his injuries were due to his own fault.

Upon the trial it was either admitted or established that the accident occurred at a point seventy or seventy-five feet from the face of the entry, at a place where and at a time when appellant and his associate were loading the coal blasted out by

the preceding shift; that they had just come on shift, and this work was part of their duty as miners; that they had inspected the entry for a distance of fifty feet from the face but no further; that the appellant could not tell without an inspection by sounding that the piece of coal which fell upon him was loose and likely to fall, but its presence and character would have been revealed through an inspection by sounding so that it could be picked down; no such sounding was done by either appellant or respondents; that blasting affects the roof and walls of the entry for not to exceed ten feet from the face, but loosening of the walls and roof is accomplished by the action of air to which this portion of the entry in question had been exposed for nearly a month; that as the result of the accident appellant sustained serious injuries. Appellant also sought to show the existence of an agreement, rule or custom by which the miners were to examine and keep safe the entry for a distance of fifty feet from the face, and the company to do likewise beyond that point; but this the trial court would not permit, being of the opinion that by Chapter 120, Twelfth Session Laws, called the "Coal Mining Code," the duty is imposed upon the miner to examine and keep safe his own working place; that his "working place," within the meaning of section 83 of that Act, is wherever as miner he is required to mine or load; and that the existence of any rule, custom or agreement in derogation of this duty is immaterial. In further expression of these views, the plaintiff was nonsuited, and error is assigned accordingly.

1. At the common law the rule undoubtedly is that it is incumbent upon the master to exercise ordinary care and diligence to provide his employee with a reasonably safe place in which to work; and the employee is justified in assuming this duty to have been performed, so that, though bound to observe and [1] protect himself against such dangers as are open and obvious to his senses, he is not required to stop, examine, and experiment for himself to see if the place assigned to him is a safe one. (*Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673; *Schroder* v. *Montana Iron Works*, 38 Mont. 474, 100 Pac. 619.) This rule does not obtain "when the plaintiff and his

fellow-servants are creating the place of work; when it is constantly being changed in character by the labor of the men working upon it; when it only becomes dangerous by the carelessness or negligence of the workmen" (*Shaw* v. *New Year G. Min. Co.,* 31 Mont. 138, 77 Pac. 515; *Thurman* v. *Pittsburg & Mont. Co.,* 41 Mont. 141, 108 Pac. 588) ; but it does obtain where the place is a completed one, as, for instance, that part of a mine tunnel which is behind the miner engaged in driving it (*Kelley* v. *Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273). The argument is that, since these rules apply as well to a coal mine as to any other place of employment (*Allen* v. *Bear Creek Coal Co., supra; Tennessee Coal etc. Co.* v. *Garrett,* 140 Ala. 563, 37 South. 355; *Central Coal & Coke Co.* v. *Williams,* 173 Fed. 337, 97 C. C. A. 597; *McKenzie* v. *North Coast Colliery Co.,* 55 Wash. 495, 28 L. R. A. (n. s.) 1244, 104 Pac. 801), and since under them the appellant could have recovered, he should still be allowed to recover because the Coal Mining Act, by failing to define what the "working place" is which the miner must examine and keep safe, must be presumed to mean the working place as understood at common law.

We do not know of any precedent or principle by which the **[2]** working place of a coal miner, which at common law he must keep safe, is precisely defined; but if the working place as understood at common law is merely the face of the entry or that portion of the entry the walls or roof of which might be affected by blasting, then we think a specific modification in that regard is indicated by section 83 of the Coal Mining Act (Laws 1911, Chap. 120), as follows: "Each miner shall examine his working place upon entering the same and shall not commence to mine or load until it is made safe. He shall be very careful to keep his working place in safe condition at all times. Should he at any time find his place becoming dangerous from any cause or condition, to such an extent that he is unable to take care of the same personally, he shall at once cease work and notify the mine foreman. * * * " In passing, we may add that by section 103 of the same Act penalties are provided for its violation, including violations by miners of section 83. The plain

meaning of section 83, as it seems to us, is that before he goes to work the miner must examine the place where his work is to be done; if he is about to mine, he must examine the place where his mining is to occur; if he is about to load, he must examine that part of the workings throughout which the duty of loading is to be performed.  While he is at work he must keep safe the place where he is working, and whenever he finds it unsafe, whether as the result of his operations or otherwise, he must make it safe, or, if he cannot do that, he must quit the work and report.  It is thus apparent that the "working place" which the miner must under the statute examine and keep safe is a varying area, and that the duty imposed is a positive one.  The suggestion is made that this cannot be so, because the Act by its section 70 requires the master to see that "all loose coal, slate and rock overhead in rib in traveling ways, where miners have to travel to or from their work," are taken down or carefully secured, and by its section 73 requires the foreman or his assistant to visit and examine every working place at least each alternate day and see to the security of the same.  The conclusion does not follow; rather the clear intent of the statute is that [3] such places as are the seat of active operations shall be looked after by both master and servant, and the mere fact that at a given time one of such places may not be the seat of active operations, and may therefore at such time be subject to the exclusive inspection of the master, does not absolve the employee from the duty of examination when that place is, or is about to become, the scene of his labors.  As to the place at which the appellant was injured, the respondents should have seen to its safety; but it was also the duty of the appellant to refrain from loading until he had examined it and had made it safe.  Neither party having observed the statutory duty, and [4] the accident being due to this nonobservance, the parties were *in pari delicto,* and the case is squarely within the reasoning of *Melville* v. *Butte-Balaklava C. Co.,* 47 Mont. 1, 130 Pac. 441, in which, under analogous circumstances, the right to recover was denied.  (See, also, White on Personal Injuries in

Mines, sec. 354; Thompson on Negligence, sec. 204; *Young* v. *Chicago, M. & St. P. Ry. Co.*, 100 Iowa, 357, 69 N. W. 682.)

2. No difficulty is met in the ascertainment of the intent with which the Act was passed—the evil sought to be remedied, the **[5]** good to be attained. Every section speaks the legislative realization of the hazards of coal mining—hazards which may involve not only the loss of valuable lives, but other consequences of grave import to society, and which, in the interest of the employee, the employer, and the public, it is imperative to reduce. Can such an Act, can provisions therein imposing duties designed to accomplish such a purpose, be nullified by private agreement, private rule, or private custom? The answer is given in *Edwards' Admr.* v. *Lam*, 132 Ky. 32, 119 S. W. 175, the very case relied on by appellant to support his contention. In that case the effect of an agreement between the employer and employees, which was not in derogation of the statute, was involved, and touching it the court said: "The duty of the mine owner, independent of statutory regulation and that primary duty to furnish a reasonably safe place in which to work, may vary according to the contract between him and his laborers. * * * If the employer and laborers all agree that the latter are to be of the same or a common grade, and shall have control themselves of certain features in the work, designed for their better protection, we are unable to see wherein the arrangement is illegal, so long as the public policy and the statutes are not violated." But that the plain provisions and clear purpose of a statute may not be set at naught by agreement, rule, or custom is too well settled for discussion. (*Chicago & E. R. Co.* v. *Lawrence*, 169 Ind. 319, 79 N. E. 363, 82 N. E. 768; *Voshefskey* v. *Hillside C. & I. Co.*, 21 App. Div. 168, 47 N. Y. Supp. 386; *Young* v. *Chicago, M. & St. P. Ry. Co.*, *supra; Smith* v. *Milwaukee B. & T. Exchange*, 91 Wis. 360, 51 Am. St. Rep. 912, 30 L. R. A. 504, 64 N. W. 1041; *Little* v. *Southern Ry. Co.*, 120 Ga. 347, 102 Am. St. Rep. 104, 66 L. R. A. 509, 47 S. E. 953; *Missouri, K. & T. R. Co.* v. *Roberts* (Tex. Civ. App.), 46 S. W. 270.)

The district court was clearly correct in both the positions taken, and the order of nonsuit necessarily followed. The judgment appealed from is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

