McINNESS, Respondent, *v.* REPUBLIC COAL CO. et al., Appellants.

(No. 3,368.)

(Submitted March 23, 1914. Decided April 13, 1914.)

[140 Pac. 235.]

*Personal Injuries—Master and Servant—Coal Mines—"Working Place"—Definition—Assumption of Risk—Instructions—Harmless Error—Independent Contractor.*

Master and Servant—Coal Mines—"Working Place"—Definition.
  1.  Plaintiff coal miner was injured by the fall of a rock from the roof of a tunnel about seventy feet distant from the place where he had been actively engaged in mining coal and while on his way to secure an empty car for loading. Section 83 of the Coal Mining Code (Laws 1911, Ch. 120) imposes on the miner the duty to inspect and keep safe his "working place." *Held,* that plaintiff's

working place, within the meaning of that Act, at the time of his injury, was the place where he was about to load the coal previously blasted down by him, and not the place in the tunnel where the accident occurred which latter, having been turned over to defendant about three weeks before, had become a traveling way—an appliance for plaintiff's use—which it was the duty of defendant's foreman to inspect.

Same—Assumption of Risk.

2. The risk arising from defendant's failure to discharge its duty to exercise reasonable care to make the tunnel in which plaintiff was injured, a reasonably safe place and to maintain it in that condition, was not one of those the latter assumed, in the absence of evidence that though the danger was obvious he nevertheless, with knowledge of it and appreciation of the risk attending it, and without any assurance from the master that the defect would be remedied, continued to use the way.

Same—Assumption of Risk—Inapplicability of Doctrine.

3. The evidence disclosing that sounding was necessary to detect loose rocks in the roof of a coal mine tunnel used as a passage way by the miners, the fact that plaintiff made a visual examination of the place where he was hurt and found it safe was not sufficient to charge him with assumption of the risk incident to falling rock at that place.

Same—Question of Law—Erroneous Submission—Harmless Error.

4. The submission of the question whether the place where plaintiff was injured was within his working place, if error, was harmless where the court, under the evidence, might properly have instructed them that it was not,—a conclusion arrived at by their general verdict in his favor.

Same—Independent Contractor.

5. A coal miner who, though paid at a certain rate per ton or yard of coal extracted by him, was required to obey the rules and directions of the defendant company, was an employee and not an independent contractor.

[As to duty of mine owners to prevent injury to employees, see note in 87 Am. St. Rep. 557. As to liability of mine owner to employee injured by falling of roof of mine, see note in Ann. Cas. 1912B, 577.]

*Appeal from District Court, Musselshell County; Geo. W. Pierson, Judge.*

Action by Dan McInness against the Republic Coal Company and others. From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Affirmed.

*Messrs. George F. Shelton, Thos. J. Matthews, Fred. J. Furman, and A. J. Verheyen,* for Appellants, submitted a brief; *Mr. Matthews* argued the cause orally.

*Mr. Alexander Mackel,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages for personal injuries suffered by the plaintiff while engaged as a coal miner at Klein, Montana, in the "northeast main entry of mine No. 2," a mine owned and operated by the defendant Republic Coal Company. The defendant Griffin was superintendent in charge of the mine, and defendant Beever, assistant foreman and face boss. From a judgment in favor of plaintiff and from an order denying a new trial, the defendants appealed.

There are not any conflicts in the evidence upon material matters. The plaintiff was employed by the defendant coal company, and paid according to a wage scale agreed upon by the mine operators and representatives of the miners of that district. His business was running an entry or tunnel some twelve feet wide through a blanket vein of coal. In height the tunnel was measured by the thickness of the vein—about five feet nine inches. This tunnel had been driven for a considerable distance, and every two weeks or thereabouts the work was measured up and paid for by the company, at the rate of "73 cents per ton, and $3.25 per yard." In the course of the work of driving this tunnel, a pothole in the roof was passed. So much of the rock in the hole as was loose at the time was taken down, but no timbering or other precautionary measures were resorted to for the purpose of securing it. The roof of the tunnel was considered to be self-supporting, and timbering was not generally employed. At the time of this accident the tunnel had been driven about seventy feet beyond the pothole, and plaintiff had been paid for the work of excavating and mining at that point at least three weeks before the time of the accident. In addition to the work of blasting down the coal, the plaintiff and his coworker were required to load, and the empty cars were usually set out for them at a slant, ninety feet or more from the face of the entry, and the powder for blasting was kept back of the face a distance of about 300 feet, so that to get empty cars or powder,

plaintiff was required to pass out through the entry and under the pothole. On the morning of December 9, 1911, after he had loaded one car, and while he was passing out to the slant for an empty car, a large rock fell upon him from the pothole, causing the injuries of which complaint is made.

1. The first and principal contention of appellants is that they are not responsible for the injury to the plaintiff because the place where he was injured was a part of his ''working place,'' · [1]   within the meaning of the Coal Mining Code (Chapter 120, Laws 1911). In *Kallio* v. *Northwestern Imp. Co.*, 47 Mont. 314, 132 Pac. 419, we considered somewhat the provisions of that statute, and particularly section 83, which imposes upon the miner the duty to inspect and keep safe his working place; and we held that for an injury received in his working place the miner could not recover if it resulted from his failure to perform the duty imposed by section 83. Respecting the ''working place'' we said: ''We do not know of any precedent or principle by which the working place of a coal miner, which at common law he must keep safe, is precisely defined.   *   *   *   The plain meaning of section 83, as it seems to us, is that before he goes to work the miner must examine the place where his work is to be done; if he is about to mine, he must examine the place where his mining is to occur; if he is about to load, he must examine that part of the workings throughout which the duty of loading is to be performed. While he is at work he must keep safe the place where he is working, and whenever he finds it unsafe, whether as the result of his operations or otherwise, he must make it safe, or, if he cannot do that, he must quit the work and report. It is thus apparent that the 'working place' which the miner must under the statute examine and keep safe is a varying area, and that the duty imposed is a positive one.'' The pertinency of that language is greatly emphasized when we consider it in the light of the facts of that particular case. Kallio was loading coal which had been thrown back seventy or seventy-five feet from the face by the force of the blast. He commenced the work of loading at the farthest

point, and while thus engaged was injured. Necessarily his working place while loading would change as his work progressed until all the coal knocked down by the blast had been removed, when his working place would be at the face of the entry. In the present instance we are not informed by the record how far back in the tunnel the coal was thrown by a blast, but it is wholly immaterial, for the undisputed evidence is that the place where plaintiff was loading the coal into the cars was from sixty-five to seventy feet from the pothole where he was injured. In the *Kallio Case* a liberal construction was given to the language of the Coal Mining Code, to the end that its several provisions might be harmonized and the obvious purpose of the legislature carried out; but nothing said in that case justifies the assumption of these appellants that the language of section 83 above is sufficiently elastic to cover the case presented by their appeals. The tunnel at the pothole, and for many feet in front of and beyond that point, was completed, and the work paid for some time before this accident occurred. It is true that plaintiff was required to make use of that portion of the tunnel to get empty cars, powder and other appliances; but equally was he required to use it in order to get to and from the face where he was actually engaged at his work. To construe the language of section 83, to include in and as a part of the miner's working place, not only the place where he works, but as well the entry ways through which he must pass to and from his work, or for the purpose of getting supplies, would be nothing short of judicial legislation. The term "working place" is not defined by the Act; but a construction in harmony with appellants' view would impose a burden upon the miner which in many instances would require all his time to discharge and prevent his employment being of any profit to himself, or any use to his employer. If the pothole seventy feet from the place where he was loading was within plaintiff's working place because he had to pass that point to secure empty cars and other supplies, then the whole 300 feet between the face and the magazine was likewise within and a part of his working place, because he had to pass through

it to secure powder.   Such a construction would result in a perversion of the language of the Act and impose upon the miner a duty incompatible with his work, and one clearly never within the contemplation of the legislature.   It is sufficient for the purposes of this case to say that on December 9, 1911, plaintiff's working place while he was loading was at the point where the coal was actually put upon the cars, and while drilling and blasting, it was at the face of the entry.

When the plaintiff had removed the coal from the tunnel at the pothole and the work had been measured up and paid for, that portion became complete, was turned over to the company, and thereafter was a passage or traveling way, the duty of inspection of which was devolved by the Act upon the company's foreman by section 71.   As to the miner, this traveling-way was an appliance for his use, but not a part of his working place.   (3 Labatt on Master and Servant, 2d ed., sec. 890.)

2. With this principal question solved, the contention that the plaintiff failed to make out a cause of actionable negligence requires very little consideration.   The rules defining the master's common-law duty and the extent of the risk assumed by the servant have been iterated and reiterated so often since the decision of *Kelley* v. *Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273, that further repetition is unnecessary.   Indeed, counsel for these respective parties do not disagree at all with reference to them, but only as to their application to the facts of this case.   Since it was the master's duty to exercise reasonable care [2, 3]   to make of this traveling-way a reasonably safe place and to maintain it in that condition, the risk arising from his failure to discharge that duty is not one of the risks which the servant assumed unless the danger was obvious and the servant, with knowledge of the danger and appreciation of the risk attending it, and without any assurance from the master that it would be remedied, continued to use the way.   It is true that plaintiff testified that on the morning of the accident as he went in to his work, he made a visual examination of the pothole and found it safe.   But his judgment, upon the matter, based upon

that casual examination, was not conclusive.  The evidence is that sounding should be resorted to, to detect the looseness of large rocks in such situations, or, as in this instance, to determine with any reasonable degree of certainty whether the rock in this pothole had become loose by reason of the action of the air, water, vibrations caused by blasting, or otherwise, and that this character of examination was not made.  The defendants were aware of the existence of the pothole for a sufficient time before the accident to enable them to make a proper examination and repairs.  They failed in this duty, and must respond in damages as a consequence.  Knowing of the existence of the pothole, section 73 made it their duty to know of the danger, if by reasonable examination the danger would become apparent.

3. The court submitted to the jury the question whether the [4] pothole where plaintiff was injured was within his working place, and by the general verdict the jury found that it was not. The court might properly have directed the jury to the same conclusion, in view of the undisputed evidence of this case; and therefore error, if error, in submitting the question to the jury, was harmless.

4. The contention that plaintiff was not a servant of the company, but an independent contractor, is disposed of adversely to the appellants by the decision in *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673.

The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.