## LIABILITY OF PAWN=BROKER FOR PLEDGED ARTICLES STOLEN FROM HIM.

Superior Court of Cincinnati.

JOSEPH S. BUTLER V. SAM SAVIN.

Decided, 1923.

*Pawn-Brokers—Action for Breach of Contract for Failure to Return Pledged Articles—Application to Pawn-Brokers of the Uniform Warehouse Law—Theft of Articles Charged to Negligence of Pawn-Broker—Denial of Right of Recovery by Him of Loan Made on Pledged Articles Stolen—Juror Makes Memorandum of Dates between which Interest may be Charged.*

1. Where the plaintiff brings an action against a pawn-broker for breach of contract to return pledged rings upon repayment of the amount loaned and the pawn-broker defends upon the ground that the rings were stolen without fault upon his part, the burden of proof is upon the pawn-broker to establish such defense.

2. Where the pawn-broker accepts goods for storage at a profit and makes a specific charge for storage, he brings himself within the meaning of the Uniform Warehouse Law of Ohio and subjects himself to the obligations of a warehouseman in addition to his obligation as a pawn-broker.

3. Where there is evidence that the pawn-broker kept pledged jewelry, including diamonds, in an open safe without keeping the same locked, and that robbers entered the store and stole the contents of the safe, the verdict of a jury in finding the pawn-broker guilty of negligence will not be set aside as against the weight of the evidence.

4. A pawn-broker can not recover the amount loaned to a customer upon the security of personal property under a contract of pledge which gives the pawn-broker the right to take the pledged articles in satisfaction of the debt without offering to return to the customer the pledged articles. And where the pledged articles have been stolen from the pawn-broker, he can not maintain an action against the bailor to receover the money loaned on security of such articles.

5. It is not misconduct for a juror to make a memorandum of the dates between which interest may be charged, during the course of the charge to the jury upon this subject.

*Knight & Phares* for the plaintiff.

*Jacob S. Hermann* for defendant.

Marx, J.

This action was brought by the plaintiff to recover the value of two rings pawned with the defendant and not returned by the defendant upon tender of the amount loaned on security of the rings.

The defense was that the rings were stolen from the defendant without fault upon his part. In addition, the defendant filed a cross-petition to recover from the plaintiff the amount loaned to him by the defendant. The court held as a matter of law that the defendant could not recover the amount loaned upon security of the rings without returning the rings and dismissed the cross petition.

The case was submitted to the jury upon the petition and the answer. The jury found for the plaintiff and awarded as damages the value of the rings less the amount loaned thereon. The case is now before the court upon the motion of the defendant to set aside the verdict and for a new trial.

The principal grounds relied upon by the defendant in support of his motion for a new trial are: That the court erred in its charge upon the burden of proof; that the verdict is not sustained by the evidence and that the court erred in its construction of the contract of pledge.

The Court has gone into these questions with the utmost care in order to determine a correct solution of the problems presented in this case and in view of the possible effect of this decision in other cases growing out of the same robbery.

The first error urged by the defendant relates to the burden of proof. All that the court said upon this question after reading the pleadings was:

"On these issues, the law places the burden of proof upon the plaintiff to prove all the essential and material allegations of his petition which are not admitted, by a preponderance of the evidence before he can recover. The law places upon the defendant the burden of proving the affirmative defenses set forth in his answer by a preponderance of the evidence."

The petition charged that the defendant "*agreed to safely keep said ring until it should be redeemed by the plaintiff.*" The

answer alleges that the *"ring was being cared for in the same manner as property of the defendant without any carelessness or misconduct of the defendant or his servants, and were taken by robbers at the point of revolvers without fault of the defendant."* The defendant now claims that the petition of the plaintiff in alleging that the defendant agreed to *"safely keep"* the *rings and that he did not do so, charged negligence.* If this construction of the petition be correct then there was no error in the charge of the court which placed the burden of proving the claim made in the petition, upon the plaintiff. ' However, assuming that the plaintiff does not charge negligence but a breach of contract and that the answer seeks to excuse this breach of contract by alleging that the rings were stolen without negligence, then the charge placed the burden upon the defendant. The defendant contends that it was error to impose such burden upon him and an examination of the authorities reveals a conflict as to the burden of proof with respect to the alleged negligence of a bailee for hire.

There are a number of decisions to the effect that proof of a demand for the delivery of pledged or pawned articles, and the failure to deliver such articles or their delivery in a damaged condition, raises a *prima facie* presumption of negligence upon the part of the bailee and casts upon him the burden of going forward with evidence to show that he was not negligent, but that upon the introduction of such evidence, the burden of proof upon the whole case rests with the plaintiff to prove by the greater weight of the evidence that the bailee was negligent.

On the other hand, there are a number of cases which hold that where pledged goods are lost or damaged while in the possession of the bailee, the burden is upon him to prove that the loss or damage occurred without fault upon his part. In a number of other cases, the courts have failed to distinguish clearly between the burden of going forward with evidence to meet the *prima facie* presumption arising from the mere proof of loss or damage and the burden of proving negligence by the greater weight of the evidence.

The state of the authorities is exhaustedly analyzed and anno-

tated in *Lawyer's Reports Annotated, New Series* and the *American Law Reports* in the following volumes: 43 L. R. A. (N.S.), page 1169 under the subject of Annotation: *"Presumtion and and burden of proof as to care or negligence in respect to subject of bailment."* and 9 *American Law Reports,* 559, on the subject: *Presumption and burden of proof where subject of bailment is destroyed or damaged by fire."*

Closely related is the question annotated in 11 *American Law Reports, page* 690; *"Presumption and burden of proof in actions for injury to or loss of boat during bailment."*

Of equal interest are several recent cases collected in 17 *American Law Reports, pages* 1205 *and* 1213, and the *Annotation at page* 1217, on the subject: *"Liability of bank for loss of Liberty Bonds."*

In view of this conflict of authorities, it remains to be determined which rule should be followed in Ohio. Since the exact point has not been decided in this state, we must be guided by prior decisions upon similar questions and the character of the pleadings in the case at bar and should favor that rule, which from the standpoint of logic and law would be most just beween the parties in the particular case before us.

As early as *Davidson* v. *Graham et al,* 2 Ohio State, 132, in a case against a carrier, it was held that the burden of proof that the loss occurred from damage by river, fire or unavoidable accident was upon the defendant. The court said at page 142:

"Proof that goods intrusted to a common carrier have never been delivered, either to the bailor or to the consignee, is *prima facie* evidence of loss by negligence, and sufficient to charge the carrier. In all cases of loss, the *onus probandi* is on the carrier to bring his liability within any special exemption; for it is said that *prima facie,* the law imposes the obligation of safety on him."
\* \* \* \*.

Thus, where goods were delivered on board a steamboat, and the bill of lading contained an exception of 'dangers of the river,' and the loss was occasioned by the boat's striking on a sunken rock, it was held incumbent on the carrier to prove that due diligence and proper skill were used to avoid the accident."

This doctrine is founded on sound reason, and fully sustained by authority.

In *Toledo & Ohio Central Railroad Company* v. *Ambach,* 10 Ohio Circuit Court, 490, Judge Allread expresses the reason for this rule at page 496:

"It has been sometimes held that where property has been intrusted to a bailee for hire in good condition and returned in bad condition, or not returned at all, the law shifts the burden upon the bailee to show due care on his part. *Cummins* v. *Wood,* 44 Ill., 416; *Brown* v. *Waterman,* 10 Cush, 117; *Bennett* v. *O'Brien,* 37 Ill., 250; *Funkhouser* v. *Wagner,* 62 Ill., 59.

"This rule follows, *ex necessitate,* from the nature of the case. The bailor can not show the circumstances of the loss except by the bailee or his servants, who are presumed to be adversely interested. The law, therefore, casts the burden of showing due care on the bailee."

This reasoning applies with equal force to the case at bar. The plaintiff has no means of knowing what care the pawnbroker took of his rings, except from the evidence of the pawn-broker and his employees. The plaintiff does not know what occurred during the alleged theft of his rings except from the evidence of the employees of the defendant. For this reason there is no injustice in placing the burden of proof upon the pawn-broker who of necessity is in a position to produce all of the evidence with respect to the care which he exercised in keeping the rings of the plaintiff.

This conclusion is not in conflict with the case of *Ginn, Admr.* v. *Dolan,* 81 Ohio State, 121, for in that case the court says at page 129, that:

Although the plaintiff has the burden of proving that consideration was given for a note, "a plea of failure of consideration or of payment, present a case very different from this. These defenses, as it were, confess and avoid. They are affirmative defenses, and upon such the burden is upon the defendant from the beginning to the end, just as it is upon the plaintiff here."

In a sense, the defense in the case at bar is a confession and avoidance. The pawn-broker confesses that he received the

goods; that a demand for their delivery accompanied by tender of the amount due was made and that he was unable to deliver the rings, but he avoids liability by claiming that the goods were stolen from him without fault on his part.

If the petition in the case at bar affirmatively claimed that the defendant was negligent, it is possible that this affirmative allegation contained in the petition would place the burden upon the plaintiff so as to make the rule applied in *Chaflin et al* v. *Meyer,* 75 New York, 260; and the long line of cases of similar import applicable. It is not necessary, therefore, to decide what the rule would be if the petition affirmatively alleged specific negligence upon the part of the defendant. The petition does not allege such negligence, but is carefully drawn so as to state a case of breach of contract and counts upon a failure to return the pledged articles in accordance with the terms of a written agreement of pledge which is attached to the petition.

That the form of action may still be of importance in determining the burden of proof is made clear by the decision in *Heckler* v. *The Columbus Transfer Company,* 17 Ohio Nisi Prius Reports (N.S.), 294, in which the court holds that the burden of proving that defendant was not guilty of negligence contributing to the loss of a bailment by fire is upon the defendant. The court says at page 295:

"The obligation of proof is different where the bailor founds his cause upon negligence than it is when it is in *assumpsit,* in which case the burden of proving loss by negligence of the bailee rests upon the plaintiff in the first instance to show that the negligence of defendant caused the loss to plaintiff as part of his case. *Maloney* v. *Taft,* 60 Vt. 571 (Am. St. 135); *Lancaster Mills* v. *Cotton Press Co.,* 24 Am. St., 586.

"But where the demand by the bailor rests upon the contract of bailment, at it does in the case at bar, proof of failure on the part of the bailee places the burden on him to prove that he was ordinarily prudent. See also, *Woodruff* v. *Painter,* 150 Pa. St., 91; 30 Am· St., 786; *Mills* v. *Gilbreth,* 47 Mt., 320."

The effect upon the rules as to the burden of proof which the pleadings or form of the action may have is pointed out in a num-

·ber of cases.   For example in *Bernstein* v. *Morse,* 261 Federal
Reports, 435; where a ship was injured while in the exclusive
possession of the bailee, the court gave the libelent the benefit
of the same rule as if he had alleged a breach of·contract and the
failure to return the boat in good condition at the end of the hir-
ing and placed the burden upon the charterer of the boat to
justify the breach of the charter party.

The same rule was applied in *Harms* v. *New York,* 125 New
York Supplement, 477, in which the court said that had the
plaintiff brought his action in tort, it would have been necessary
to prove negligence, but having brought it in contract, he need
not do so.   To the same effect is *Robertson* v. *Plymouth Lumber
Company,* 165 North Carolina, page 4.

Other cases upon the subject of the rule as affected by the
pleadings or form of action may be found collected in 9 Amer-
ican Law Reports, Annotated, 575.

In this connection an interesting question is suggested by the·
cases which hold that under a contract of bailment, in which
the bailee is bound to return the goods, he becomes an insurer
and can not escape liability by proving that the goods were lost
without fault upon his part. For example see: *Grady* v. *Schwein-
ler* (16 N. D. , 452, 113, N. W. 1031) ; *National Cash Register Co.*
v. *Caillias,* 84 N. Y. Supp., 166; and cases collected in annotation
of 14 Lawyers Reports Annotated (N.S.), 1090.

Under these cases, if a contract of pledge is to be construed
as a contract to return the rings except for fire and burglary,
then the question of negligence is not in the case and the pawn-
broker is absolutely liable.   It is true that there is no specific
promises to return the goods, but it may be queried whether
such a promise is not implied from the terms of the receipt and
particularly from the single clause which undertakes to exempt
the pawn-broker from liability in case the goods are lost either
by fire or burglary.   This single exception to the liability of the
pawn-broker reads as follows:

"Sam Savin not to be held accountable in case of fire or burg-
lary."

Does this mean that he is to be held accountable in all other cases? If so, he has by contract taken upon himself a greater liability than the common law or the court in its charge to the jury imposed upon him. Since the rings were not lost by fire, and burglary has a specific technical meaning in the law of Ohio, namely: *"a taking in the night season,"* the defendant under this view of the contract and the cases above cited would be absolutely liable. It is not necessary to determine this question for the reason that the plaintiff did not insist upon such a construction of the contract during the trial, and the court only placed upon the defendant the common law duty to exercise the care of a warehouseman. The charge given by the court to the jury is in fact part of the statutory law of the state as applied to *Warehousemen.* Section 8464 of the General Code, provides that:

A warehouseman is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor if such demand is accompanied with:

1. An offer to satisfy the warehouseman's lien.

2. An offer to surrender the receipt if negotiable, with such indorsements as would be necessary for the negotiation of the receipt. * * *

The same section then provides:

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to *establish the existence of a lawful excuse for such refusal."*

This statutory rule removes any doubt as to the law of Ohio upon the burden of proving the existence of a lawful excuse and places the burden squarely upon the bailee to establish a lawful excuse for non-delivery by a preponderance of the evidence. The same act defines the degree of care required in Section No. 8477 of the General Code as follows:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise,

but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.''

The charge of the court to the jury in the case at bar, although the statute was not called to the attention of the court during the trial was almost in the same language. The court said to the jury:

''The law is that the defendant, as a pawn broker in this case, was bound to exercise all of the care with respect to pawned property, property left in his possession, as security for loans, that the ordinarily careful and prudent business man engaged in a similar business would take under the circumstances and with respect to his own property. In other words, the pawn broker was bound to exercise ordinary care under all the circumstances of the case and would only be responsible for the theft of the goods if he failed to exercise such care.''

It may be urged that a pawn broker is not ordinarily thought of as a warehouseman within the meaning of the Uniform Warehouse Receipts Law. Whether he is or not, the rule of law applicable to pawn brokers and the rule applicable to warehousemen is the same and there is no sound reason why the law should not be made uniform as to the obligations with respect to the degree of care required of the pawn broker and the warehouseman, and with respect to the burden of excusing non-delivery of goods left in their possession. A warehouseman is defined by the act as:

''A person lawfully engaged in the business of storing goods for profit.'' Section 8508 of the General Code.

The defendant in the case at bar made a storage charge, and to this extent, was a warehouseman. He was also engaged in the business of lending money on pledges of personal property and hence, is a pawn-broker within the meaning of Section 6863 of the General Code as amended in 109 Ohio Laws, 593. As he engages in the business of storing goods for profit and of lending money on the security of goods, there is no reason why

his business does not come under the regulations of both the warehouse law and the pawn brokers law.

For the reasons referred to above at some length the court is of the opinion considering the pleadings in the case at bar and the authorities and statutory law of the state, that the language used by the court in its charge to the jury, even if construed as placing the burden of proving freedom from negligence upon the defendant, was correct.

It is urged that even if the charge of the court was correct, the verdict under the charge was wrong. This contention is based upon the claim that the weight of the evidence clearly proved that the defendant did everything that a cautious and careful pawn broker would have done to protect the goods of his customers and that the rings were stolen without any fault upon the part of the defendant. There can be no . question about the fact that the store of the defendant was entered by robbers who overpowered the clerks at the point of revolvers and helped themselves to the contents of the store and safe. However, it is equally clear that the safe was not locked and the open safe necessarily was an invitation to the robbers who easily possessed themselves of its contents. It is very doubtful whether the large amount of jewelry which the defendant claims was stolen could have been taken by the robbers if the safe had been locked. It was a question of fact for the jury to determine whether a reasonable, prudent business man in the exercise of ordinary care would have left a safe containing from fifteen to thirty thousand dollars worth of jewelry and precious stones entirely open. It is true that the defendant introduced evidence that he had to have constant access to his safe and that it would have been a handicap in the conduct of daily business if the safe had to be unlocked upon each occasion, but it was for the jury to say whether the small annoyance of having to unlock the safe a number of times during each day outweighed the necessity of adopting this measure of prudence to protect the valuables, precious stones and jewelry of the defendant's customers. This court can not say that the verdict of a jury

finding the defendant negligent in omitting to keep his safe, or at least the compartment which contained diamonds locked, was so manifestly and clearly against the evidence that it should be set aside.

Upon the question of the degree of care, the court calls attention to several recent cases involving the theft of Liberty bonds from banks in which the banks have been held liable for negligence as bailees although the bonds were stolen from a safe. For example see: *Harper* v. *Elon Banking & Trust Co.,* 182 N. C., 298, 109 S. E. 6; 17 American Law Reports, Annotated, 1205, in which the Supreme Court of North Carolina says:

"The theory that the bailee's care of his own property is a satisfactory test of his duty to a bailor has also been rejected. It is now the law that the bailee must take such care of his property as prudent and careful business men generally take of property of like value and importance. Any other rule would put a premium upon negligence and carelessness."

The court then held:

"Among other things, the failure of the bank to keep the bonds in a burglar proof compartment of its safe where there was 100 per cent safety, might be submitted to the jury for their determination as to whether the bank was negligent."

In *Pennington* v. *Farmers & Merchants Bank,* 144 Tenn., 188; 231 S. W., 545; 17 American Law Reports, 1213.; the syllabus reads:

"A bank which undertakes to care for a bond of large value belonging to a customer, which is negotiable by delivery, and is lost by the burglarizing of the bank's vault, may be found to be negligent in leaving it in the vault, which was old and built of brick without steel lining, where there was no police protection in the town and no lights or watchman in the bank, and it had a burglar-proof safe in the vault where valuables of the bank's officers and their relatives were kept, and which were not disturbed by the burglars."

In the case of the *Merchants Bank of Vandervoort* v. *Affholter,* 140 Arkansas, 480, the facts were as follows: Mrs. Affholter de-

livered a coupon bond to the bank for safekeeping. It was placed in the bank safe which was burglarized in the night time and her bond, together with many others belonging to other persons were stolen. The bank kept a large iron safe with a combination lock on it. Inside was a manganese steel drawer which was burglar proof, and used for the safekeeping of money. The bonds were not kept in the manganese steel drawer but were kept inside the steel safe. After the burglary, it was found that the combination of the lock on the outside of the safe had been chopped off with an axe and that explosive material had been inserted inside the lining of the door, which, when exploded, blew off the door or lock and permitted entrance. The manganese steel drawer where the money was kept was not entered. The testimony was to the effect that all of the bonds kept by the bank, including those which were the property of the bank were kept in the same manner and that was the customary way to keep the bonds and that there was not room inside the manganese drawer to keep the bonds. Upon this evidence the court said at page 485:

"It is earnestly insisted that there is no evidence to sustain the finding of negligence on the part of the bank for the loss of the bonds. We are of the opinion, however, that the evidence was legally sufficient. These bonds were coupon bonds, payable to bearer, and negligence is inferable from the fact that they were kept, not in the burglar-proof compartment of the safe, but in the part of the safe which was insufficient to resist the attack of a skillful burglar. Appellant was, with respect to the keeping of this particular bond for Mrs. Affholter, a gratuitous bailee and was liable only for gross negligence. *Wear* v. *Gleason*, 52 Ark., 364; *Baker* v. *Bailey*, 103 Ark., 12. But it was a question for the jury to determine whether or not under the circumstances it did not constitute gross negligence to keep in an insecure place Government bonds, payable to bearer, which could not be readily identified. We can not say that the jury were not warranted in drawing the inference of gross negligence from the circumstances in the case."

That the whole matter is a question of fact which must be determined by the jury was made clear in Ohio long ago in *Grif-*

*fith* v. *Zipperwick and Lodge,* 28 Ohio State, 388.  In that case
bonds were stolen from a bank and an action brought to recover
against the bank on the ground of negligence.  The court held:

Syl. 2.  "What will constitute such gross negligence must be
determined as a question of fact, in each particular case, by the
jury, under proper instruction from the court."

The question in this case having been submitted to the jury
under proper instructions, the court is of the opinion that there
is sufficient evidence to sustain the verdict.

Another question which is not seriously argued, is that the
court should not have dismissed the cross-petition filed by the
defendant which sought to recover from the plaintiff the amount
loaned him upon security of the rings.  It seems too clear to
require the citation of authorities that the contract of pledge by
its terms did not contemplate a repayment of the loan without
a return of the rings.  In other words, the pawn-broker looks
to the collateral as the consideration for his loan.  The contract
provides that in consideration of the indebtedness for securing
the payment thereof, the plaintiff has placed in the hands of
the pawn-broker his rings which he is authorized to take in full
satisfaction of the debt or to sell the same at his election. There
is no provision in the contract which purports to give the pawn-
broker a right to recover against the plaintiff for any sum in
case the collateral should not bring the amount of the loan. The
whole nature of the transaction is such that the pawn-broker
can not recover the money loaned, and certainly not, without
returning the security for such loan.  The return of the pledged
goods is a condition precedent to the maintenance of the cross-
petition and, since it is admitted that the pawn-broker can not
return the rings which he received as security for the money he
advanced the plaintiff, his cross-petition must fail.

Finally, it is urged that a new trial should be granted because
one of the jurors noted with a pencil upon a piece of paper dur-
ing the course of the charge the dates from which interest should
be calculated if the verdict should be returned in favor of the
plaintiff.  So far from this being misconduct of the juror, the

court feels that it was entirely proper and indeed praiseworthy for the juror to make a memoranda of the interest dates as the ordinary juror can not be expected to remember particular dates between which interest is allowed without some written memorandum.

Furthermore, since counsel observed the conduct of the juror at the time, it was the duty of counsel to complain at the time and, not having done so, he can not be heard to complain after the verdict has been returned.

For these reasons, the motion for a new trial will be overruled.